Matthew M. Levy, J.
Pursuant to section 1458 of the Civil Practice Act, Deering, Milliken & Co. Inc. (hereinafter referred to as “ Deering”) served a notice of intention to conduct an arbitration upon the Eimco Corporation (hereinafter referred to as “Eimco ”) with respect to controversies arising out of four contracts whereby Eimco agreed to purchase Saran filter fabric from Peering. Peering claims that Eimco has refused to pay invoices issued, pursuant to the contracts, for deliveries of merchandise accepted by Eimco, who has asserted certain counterclaims against Peering arising out of alleged breach of warranty. Peering claims that the contracts have arbitration clauses. Eimco seeks an order for a stay of the arbitration on the ground that it has not contracted to settle by arbitration any claimed controversies between it and Peering.
The sale and purchase were not pursuant to any formal contracts jointly executed by the parties, but were initiated by written orders on its printed form by Eimco and accepted by Peering on its own printed form. Briefly, the procedure followed was that Eimco would send Peering an order on the Eimco order form signed by its purchasing agent, one Moore. There is no reference to arbitration on the Eimco order form. Peering would then send Eimco the Peering sales form in duplicate. One of these documents was titled “ Confirmation of Order”, which Peering requested Eimco to sign on the bottom thereof for acceptance and return. The other was marked ‘ Acceptance of Order ” and signed by Peering’s selling agent, to be retained by Eimco. In the case of three of the sales, Moore of Eimco *425 signed and returned the “ Confirmation of Order”, while as regards the fourth it appears that it was signed by Moore but filed in Eimco’s office and never returned to Leering. The Leering forms contained clauses on the face thereof which referred, either on the face or reverse side, to other conditions and terms. The three confirmation orders denominated as Numbers “5142”, “ SW 2165” and “5155” contained an arbitration clause on the reverse side thereof. Such a clause was contained on the front of confirmation order No. “ 5853 ”.
The agreements as to the sale of the fabrics are not in dispute and the deliveries thereunder are not. But Eimco contends that the contracts entered into between the parties do not provide for arbitration and that there was no meeting of the minds between the parties as to the printed matter on the face or the reverse side of Beering’s confirmation orders, which include the provision for arbitration. Eimco also contends that in three of the four alleged contracts (all but No. 5853) the purported arbitration clause applies to a type of goods different from that sold, and that, as to the fourth alleged contract, if it is a contract requiring arbitration, certain conditions of the arbitration clause have not been met by Leering. Eimco urges, further, that the alleged contracts were not signed by any representative of Eimco having authority to bind Eimco to arbitration and that in any case Leering is not the proper party to demand arbitration.
The notice to arbitrate, served pursuant to section 1458 of the Civil Practice Act, is entitled General Arbitration Council of the Textile Industry. In the Matter of the Arbitration between Leering, Milliken & Co., Inc., and The Eimco Corporation ”. Notice was therein given to Eimco by Leering that ‘ ‘ the undersigned intends ” “to conduct an arbitration with respect to controversies arising out of said contracts ”. The notice was signed by the ‘ Attorneys for Leering, Milliken & Co., Inc.” The first question to be considered is whether Leering has standing to demand arbitration, assuming that there were undisputed contracts specifically providing for arbitration of disputes. It appears that Leering’s “ acceptance of order ” forms and its ‘ ‘ confirmation of order ’ ’ forms describe Leering “ as agent for ” a named company, and Beering’s “ acceptance of order ’’forms contain the printed legend, “ Accepted Leering, Milliken & Co., soiling agent ”. It is to be noted that, in the notice to arbitrate signed on Leering’s behalf, no reference was made to either of Beering’s principals named in the alleged contracts, and, indeed, that the notice was not signed by Leering “ as agent ”. May Leering, on its own, so proceed?
*426 Eimco does not claim that Deering* was not authorized by its respective principals to enter into the contracts for the sale of the merchandise here involved, but asserts that in an arbitration proceeding with Deering’ as an adverse party rather than Deering’s respective principals, Eimco cannot adequately protect its interests in regard to defenses or counterclaims. No cases have been cited in the briefs of counsel, from the point of view either of precedent or argument. I have sought guidance, therefore, by way of independent research — both in the area of the law of arbitration and of the law of agency, but I must confess that I was able to find little of definitive help. My conclusion, however, reached after some consideration, is definite — and that is, that, on the present submission, without more, Eimco’s objection must be sustained, and, as I see it, on the ground that an award in arbitration between Deering and Eimco would not necessarily be binding upon Deering’s principals, and that to compel Eimco to submit to such an arbitration would not dispose of the controversies arising under the contracts.
Where an agent acts within the scope of his authority, and, on behalf of a disclosed and specifically designated principal, enters into a contract with a third party, there is a presumption that the agent does not intend to bind himself personally to the contract, and that the principal, not the agent, is a party to the contract (Hall v. Lauderdale, 46 N. Y. 70, 75; Restatement, Agency, § 320; 1 Mechem on Agency [2d ed.], §§ 1167, 1168). It may be that, in the case at bar, Deering is the real party in interest (Civ. Prac. Act, § 210) or is possessed of “ such a general agency as authorized them [Deering] to act in all matters affecting the contract for and on behalf of the mill [the principal], and even to bring and maintain an action in their own name for the benefit of the mill.” (Watts v. Phillips-Jones Corp., 211 App. Div. 523, 529, affd. 242 N. Y. 557.) But that does not appear from the papers before me. On the contrary, among the provisions on the reverse side of Deering’s own forms, I note that notices with respect to the contract are required to be sent to the seller in care of its agent, Deering, or to such address as the seller or its agent may designate. To me, this emphasizes that Deering has not shown that it has, as a matter of law, the power of a general agent over all incidents of these transactions. Since Deering, quite clearly, was an agent in the dealings between the parties, I hold that the conceded authority in Deering to make the sales for the named principals does not, as a matter of law, imply authority in Deering to compel performance by process in its own name as principal — and the service of a notice to arbitrate is the recognized *427 process for the commencement of this type of special proceeding (see Matter of Katz [Burkin], 1 Misc 2d 67, 69-70). Nor can I, under the facts so far presented, imply authority in a “ selling agent ’ ’ to institute arbitration proceedings against the buyer who has failed to make payment for the goods purchased or who has laid claim for breach of warranty with respect to them. It may be that the custom and usage of this industry imply or accord power to such an agent so to proceed, but that is not here established.
On the other hand, I find no precedent to the effect that an agent, authorized to conduct arbitration proceedings on behalf of his principal, is, as a matter of law, an improper party to the proceedings. In his treatise on Commercial Arbitrations and Awards, at page 173, Professor Sturges says: “ General principles concerning implied authority, ratification and estoppel have been applied in these cases as in other cases involving the powers of agents and other representatives generally. If A participates in an arbitral hearing without objection to the authority of B, who acted in his behalf in submitting the cause, A will be concluded and bound by the award. He will be said to have Avaived the question of B’s authority to act.” The key here is ‘ ‘ knowledge ’ ’ of the pendency of the arbitration proceeding— either by way of advance authority to the agent of one kind or another to institute it or later cognizance by the principal of the process so as to be bound by the determination (Watts v. Phillips-Jones Corp., 211 App. Div. 523, 529, affd. 242 N. Y. 557, supra; cf. Smith v. Sweeny, 35 N. Y. 291, 294).
In the circumstances, I have come to the conclusion that, just as I would direct a hearing on the issue of a principal contesting the authority of his agent to make an agreement to submit to arbitration in the first instance (cf. Matter of Gantt [Hurtado & Cia.], 297 N. Y. 433, infra), I shall direct a hearing to ascertain whether the agent may act as the protagonist in the arbitration proceeding sought to be commenced in pursuance of the alleged agreement to arbitrate. If Peering is then found able to proceed, the extent of liability or the measure of damages would be the same as though the claim had been presented in the name of the principal, Eimco may avail itself as against Peering of all defenses and counterclaims that would be good against the principal, and the principal would be bound by the award as rendered by the arbitration tribunal.
The general legal principles on the other issues of the case, well established as they are, are accepted by the parties, but the attempt to apply them to the facts, as at present disclosed by the record, has met with sharp disagreement. What are the *428 applicable precepts'? A party cannot be compelled to submit to the arbitration of disputes with another unless he has clearly contracted to do so (Matter of Writers Guild of America East [Prockter Prods.], 1 N Y 2d 305). Under subdivision 2 of section 1458 of the Civil Practice Act, a party against whom arbitration is sought to be compelled can obtain a stay of such arbitration where his affidavits raise a substantial issue as to the making of the agreement to arbitrate (Matter of American Rail & Steel Co. [India Supply Mission], 308 N. Y. 577). Furthermore, the party seeking to compel arbitration has the burden of establishing that there was a “plain intent ” by agreement of the parties that the determination of disputes be by process of arbitration (Matter of Layton-Blumenthal [Wasserman Co.], 280 App. Div. 135). While it is not required that the contract be signed (Matter of Helen Whiting, Inc. [Trojan Textile Corp.], 307 N. Y. 360), it is axiomatic that, before a party can be compelled to arbitrate a controversy, there must be a written agreement to arbitrate (Matter of Bullard [Grace Co.], 240 N. Y. 388; Civ. Prac. Act, § 1449). If there is found to be a contract requiring arbitration, then all the questions of fact and law disputed under the contract are to be decided under the arbitration (Matter of Kelley, 240 N. Y. 74, 78). But, if there be substantial conflict on the issue as to whether there was a meeting of the minds of the parties with clear intent to have arbitration the exclusive remedy, the issue must first be determined by trial in court (Matter of Tanenbaum Textile Co. v. Schlanger, 287 N. Y. 400; Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 N. Y. 288). With these accepted maxims before us (Matter of Nadalan Full Fashion Knitting Mills [Barbizon Knitwear Corp.], 206 Misc. 757, 758; Matter of Potter Co. [Miles Metal Corp.], 2 Misc 2d 515, affd. 2 A D 2d 816; Klein Coat Corp. v. Peretz, 4 Misc 2d 341; Matter of Brown-Turner, Inc. [Complete Mach. & Equip. Co.], 4 Misc 2d 786; Guerra v. Richard G. Krueger Corp., 4 Misc 2d 696; Matter of Fava [Spacarb New York Distrs.], 207 Misc. 846), I shall proceed to examine the remaining contentions.
One objection presented by Eimco is that its purchasing agent, Moore, had no power to bind Eimco to arbitration but only to purchase the goods, and that his authority was limited to the purchase of supplies utilizing Eimco’s order form, which nowhere contained provisions for arbitration. This contention is supported by the affidavits of Eimco’s president and of Moore himself. Moore also asserts that, in addition to lacking authority, he never intended to bind Eimco to an agreement to submit to *429 arbitration. In response, Deering urges that for about a year there were previous dealings between the parties wherein it used the identical order forms which contained the same arbitration clause as the one now in question, and that these sale-purchase transactions, entered into by Moore on Eimco’s behalf, were fully performed by both parties. Deering, in consequence, maintains that Eimco, after holding its agent Moore out to the world generally and to Deering specifically as having authority to sign purchase contracts providing for arbitration of disputes, cannot now claim secret instructions limiting his authority.
Deering’s contention that Eimco is estopped to deny Moore’s authority cannot now be accepted as conclusive. No controversy arose as to these prior dealings, so it cannot be successfully asserted that, as matter of law, Eimco acquiesced in Moore’s contracting an arbitration provision. It is a fact-question, susceptible of jury determination, as to whether or not Moore acted within the scope of his authority, or, if not, whether an estoppel operates in Deering’s favor. The case of Matter of Philip Export Corp. (Leathertone, Inc.) (275 App. Div. 102) is in point on this issue. The court said (p. 106): “Appellant insists that it never assented to any provision for arbitration by words or by conduct; that the presence of such a clause on the back of respondent’s confirmatory order was at no time called to its attention and that it did not bind itself to arbitrate any future dispute. Respondent, however, urges that there were previous dealings between the parties wherein respondent used the identical order forms, which contained the same arbitration clause as the one now in question, and further that appellant was fully aware of the provision calling for arbitration. In view of these conflicting claims, there is an issue of fact as to whether a contract in writing to arbitrate exists. Such issue must be resolved in accordance with section 1450 of the Civil Practice Act.” In Matter of Gantt (Hurtado & Cia.) (297 N. Y. 433, supra) the question arose as to the authority of one Carter to sign the contract on the petitioner’s behalf. The court stated, at pages 440-441: “ There is no statutory prohibition, in our statute, of signature by an agent, nor any command that, if an agent sign, his authority must be shown in the agreement. We think petitioner’s rights are fully protected by the Special Term order sending to a jury trial the question of whether or not Carter was in fact authorized to commit petitioner to the arbitration of such differences as might arise.” On the issue of Moore’s authority, an almost identical case is Matter of Gresham & Co. (Jordan-Kiel Co.) (202 App. Div. 211). There, also, the *430 party against whom arbitration was sought claimed that his agent, who concededly had authority to make contracts on behalf of his principal to buy goods, had no authority to execute an arbitration agreement. The agent by affidavit stated that he was not authorized to agree to arbitration and that his attention was not directed to any arbitration agreement. The court held that an issue was raised warranting a jury trial as to whether or not there was a valid arbitration contract, and that the jury must determine if there was a meeting of the minds on the making of such contract.
The question of binding Eimco to arbitration is not confined solely to its purchasing agent’s authority, but, assuming or determining authority, Eimco also contends that he never agreed to arbitration, and several issues are raised in that respect. They will now be considered.
Eimco maintains that the arbitration provisions, which appear on the reverse side of three of the Deering forms, apply to a different type of goods than those in question. The heading on the face of these documents was originally printed “ Rayon and Spun Rayon Sales Note”, but the words “Rayon and Spun Rayon ” were struck out by Deering, and the words “ Finished Goods ” typed above, so that the heading now reads “ Finished Goods Sales Note ”. Eimco contends that since the arbitration clause on the reverse side appears under the heading “Provisions of Contract Governing Sale of Gray Goods ”, which are raw and unfinished goods, these provisions were not intended to apply to these sales of “Finished Goods”, or that Deering would have made the same change on the back as it did on the front. Deering claims the issue to be without merit since, on the face of these documents, just above Moore’s signature, appears the statement that the sale is subject to all the conditions on the reverse side. This issue, too, cannot be resolved on the affidavits alone. In the circumstances here, whether the intent of the parties was to have the matters on the face include the matters on the reverse side, is a question to be decided on the trial. Matter of Philip Export Corp. (Leathertone, Inc.) (275 App. Div. 102, supra) is a case somewhat similar on this issue to the one at bar, except that in that case the buyer’s orders contained the arbitration clause and the seller’s order of confirmation did not. The court said, at page 105: “ A party should not be bound by clauses printed on the reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated”.
*431 Deering argues that Eimco has specifically agreed to arbitration by virtue of its acceptance of delivery of the merchandise sold under the contracts, and in that regard, Deering points to the last sentence in small print at the bottom of the page of the Deering form reading as follows: ‘ ‘ This contract shall become effective either (A) when signed and delivered by buyer to seller and accepted in writing by seller at its home office, evidenced by the signature of seller’s agent below or (B) when buyer accepts delivery of all or part of the goods herein described.” There is no dispute that Eimco, the buyer, accepted delivery of the goods. But whether acceptance of delivery by Eimco was on the basis of the seller’s form con arbitration or the buyer’s form sans arbitration must, on the basis of the conflicting affidavits, be resolved at a hearing of all the facts. For a commitment to arbitration cannot be spelled out from the mere acceptance of delivery — such acceptance, in the circumstances here, may have been on the basis of the buyer’s understanding as to which was the contract entered into, rather than the seller’s.
As to the fourth alleged contract, No. 5853, a further point is raised by Eimco. The arbitration clause here involved, insofar as applicable, reads as follows: ‘ ‘ Any controversy arising under, or in relation to, this contract shall be settled by arbitration. If the parties are unable to agree respecting time, place, method or rules of the arbitration, then such arbitration shall be held in the City of New York in accordance with the laws of the State of New York and the rules then obtaining of the General Arbitration Council of the Textile Industry ”. Eimco contends that there must first be a showing that the parties have been “unable to agree respecting time, place, method or rules of the arbitration ” before it can be compelled by proceedings at law to arbitrate pursuant thereto (cf. Matter of Orange Pulp & Paper Mills [Pulp Sales Corp.], 261 App. Div. 840, affd. 285 N. Y. 752). This contention is well taken, as a plain reading of the provisions indicates, and Deering’s attempt at this time to compel arbitration in accordance with that clause is premature. There must first be a bona fide attempt to resolve those questions before the notice to arbitrate becomes effective. The preliminary requirements of the contract — a condition precedent to invoking the arbitration laws of the State — are not abrogated by Eimco’s claim that the document containing these requirements is not in fact the contract between the parties.
If no issue of fact in this proceeding were presented by Eimco — who challenges the existence of the contract — the specific issue now being considered would perhaps be deter *432 minable as a matter of law on the papers as submitted (cf. Matter of Kramer & Uchitelle, 288 N. Y. 467). However, here, there are fact questions raised which must first be resolved. Upon disposition thereof the parties should comply with the terms of the contract as to the preliminary steps to compulsory arbitration.
Settle order.