Harold Baer, J.
The petitioner has moved to stay arbitration. The respondent has cross-moved to compel arbitration. Special Term found doubt as to the existence of written contracts and this issue was set down for trial (Civ. Prac. Act, § 1450; 15 Mise 2d 1033 [Epstein, J.]; order entered Nov. 12, 1958).
Respondent manufactures textile piece goods. Previously petitioner had purchased greige and other raw textiles from respondent for use in the manufacture of life rafts for the United States Navy. In each instance, except one, petitioner forwarded signed purchase orders and respondent forwarded written contracts which were signed by both parties. The contracts included an arbitration clause.
The instant situation arose in the Spring of 1957. Petitioner bid for a substantial Navy contract for life rafts. In order to prepare the bid, representatives of petitioner met with representatives of the respondent and the processor who would rubberize the fabric. These meetings and discussions continued, looking forward to substantial business.
In July, 1957 respondent prepared four contracts containing quantity, quality, price, shipment dates and terms of payment and mailed them to petitioner. Some weeks later, the contracts were returned unsigned with a memorandum relating to price. Still later, similar contracts were mailed a second time with the original price therein and were retained by the petitioner but never signed. Petitioner contends that price was never agreed upon and also raises a question with respect to quantity. The contract quantity provided material for over 6,000 life rafts, and it is contended that all parties knew in July, 1957 that the order expected would be for only 4,300 life rafts. Petitioner further contends that there was never any intention to sign the written contracts unless a Government order was received by petitioner and respondent knew this. Also, it was understood, in the event that a Government order was received, signed purchase orders would be issued and contracts signed; that there was no written agreement because such agreement was conditional upon a receipt of a Government order, and neither price nor quantity had been agreed upon (Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 N. Y. 288, 291; Matter of Albrecht Chem. Co. [Anderson Trading Corp.] 298 N. Y. 437).
On the other hand, respondent from July through September, 1957, after mailing the first contract forms, shipped over 100,000 *154 yards of piece goods to the processor for the account of the petitioner. Invoices were sent to petitioner and the latter was advised by the processor that the goods had been received. The respondent contends that the delivery and retention of the contracts, the delivery and retention of the merchandise and invoices gave rise to the written contract and, therefore, the arbitration clause contained within that contract became effective (Matter of Helen Whiting, Inc. [Trojan Textile Corp.], 307 N. Y. 360).
Did the parties by their acts and surrounding circumstances intend to enter into a written agreement?
A contract to arbitrate a future controversy must be in writing (Civ. Prac. Act, § 1449; Matter of Kelley, 240 N. Y. 74, 78), but need not be signed (Matter of Helen Whiting, Inc. [Trojan Textile Corp.], supra). Many cases spell out the intent to contract pursuant to a writing where there is retention of the agreements containing an arbitration clause, delivery of merchandise and retention thereof, invoices sent and paid, or any variation of such acts by the parties which can be interpreted as assent to or agreement upon the prior writing (Matter of Japan Cotton Trading Co. v. Farber, 233 App. Div. 354; Matter of Exeter Mfg. Co. v. Marrus, 254 App. Div. 496, 498).
None of these acts by a party may be interpreted as assent to a prior writing if both parties know and understand that such writing will not ripen into a contract until the happening of a condition precedent. In this case, that condition was the prior receipt of a Government contract. It cannot be said that the acts of the petitioner spelled out agreement when the respondent knew that there could be no written contract until there was first a Government order for which the merchandise was required. I find that both parties knew that the transaction between them was dependent upon petitioner obtaining a Government contract. Respondent knew that no Government contract had been issued when they sent their contract forms and delivered the merchandise to the processor. There was no assent to the prior writing (Matter of Helen Whiting, Inc. [Trojan Textile Corp.], supra, p. 368).
Perhaps petitioner should have returned the merchandise and the invoices promptly. They delayed because they were optimistic about the Navy order and feared that they would not have goods on hand to fill the order promptly if merchandise was returned. Likewise, respondent shipped merchandise without a purchase order or signed contract. In past dealings these were obtained and prompt payment was requested. They were also anxious for the business and kept their looms working *155 rather than close down and chance delay in production when and if the Government order was obtained.
This may explain the actions of the respective parties, but it cannot be said that any act of the petitioner confirmed the written instrument. Retention of the contracts was not acceptance. Previous dealings mitigate against the respondent because in almost every instance signed orders and signed contracts were obtained before shipments were made (Matter of Albrecht Chem. Co. [Anderson Trading Corp.], supra, pp. 440, 441).
Delivery of merchandise to the processor and retention thereof may be relevant in a suit for breach of the oral contract in the law courts; there may be sufficient evidence of an oral agreement and compliance with the requirements of the Statute of Frauds (Personal Property Law, § 85). This court is not called upon to decide that issue. Under the instant circumstances, there is no substantial evidence that the parties reached an agreement in writing (Matter of Kahn [National City Bank], 284 N. Y. 515, 523; Matter of Bullard [Grace Co.], 240 N. Y. 388, 395).
Under similar circumstances the courts have held that petitioner was not entitled to a hearing under section 1450 of the Civil Practice Act. The party seeking arbitration must sustain the burden of establishing the existence of a substantial issue as to the making of such a contract. The burden of proof is on the party seeking arbitration to establish that there was plain intent by agreement to limit the parties to that method of deciding disputes (Matter of Layton-Blumenthal, Inc. [Wasserman Co.], 280 App. Div. 135; Matter of Eimco Corp. [Deering, Milliken & Co.], 6 Misc 2d 422, 428).
This transaction took place without a written agreement. The parties proceeded knowing that there would be no written agreement until the happening of an event- — a Government contract— which never did materialize. There is no clear showing of any understanding to the contrary (Matter of Pavia & Co. [Fulton County Silk Mills], 284 App. Div. 391, 393).
I find that there are not four written contracts. Petitioner’s motion should be granted and the motion of the respondent denied.