DUNN MERCANTILE & LOAN COMPANY, Appellant,

v.

James L. GRUBBS, Respondent.

No. 46138.

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 2, 1983.

Erbs & Erbs, Mark W. Suardi, St. Louis, for appellant.

Donald V. Nangle, St. Louis, for respondent.

WILLIAM E. TURNAGE, Special Judge.

James L. Grubbs filed suit against Dunn Mercantile and Loan Company for the value of a gold bracelet which Grubbs had delivered to Dunn as a pledge for the repayment of $2,000. The court entered judgment in favor of Grubbs in the amount of $6,750 and Dunn has appealed.

On this appeal, Dunn contends that the contract between the parties excluded its liability for nondelivery of the bracelet, and that because the bracelet had been taken in an armed robbery, Dunn was not liable for the nondelivery. Affirmed.

The facts in this case were stipulated. This stipulation, together with the deposition of Charles Dunn, constituted all of the evidence.

In November of 1980, Grubbs took a gold bracelet to Dunn and obtained a loan of $2,000, which was to be repaid 30 days thereafter, along with the sum of $40 as interest. Dunn had Grubbs sign a short agreement, which read as follows:

St. Louis, Nov 14, 1980        42258
Pledged with Dunn Mercantile & Loan Co.,
as security for a loan, due and payable 30
days after date, for the sum of $2,000. The
following property, to-wit:

                     Interest $40

22 Gold Brac.
6219 Pennsylvania

           Signature /s/ James Grubbs
           The conditions described on the reverse side of this receipt constitute
           a part of the loan contract.

The agreement signed by Grubbs was one of five contained on a single sheet. On its left side the sheet had holes, apparently designed to accommodate a loose leaf binder. On the back of the sheet containing the five agreements and opposite each agreement on the front page, the following passage was printed:

As no charge is made to cover insurance or storage the Company will not be liable for any loss of or damage to the pledge from rust, fire or water, or theft, or any other cause whatever.

The pledge may be given any person presenting this ticket and paying all charges. The pledgee will consider possession of the ticket evidence that the holder had title to the pledged goods.

There is no evidence in the record regarding whether or not the printing on the reverse side was visible from a prior sheet at the time that Grubbs signed it, or whether the reverse side would have been visible only by turning the sheet over. In any case, there is no evidence that the printing on the reverse side was called to Grubbs' attention.

The transaction with Grubbs was handled by Ms. Burroughs, an employee of Dunn. In his deposition, Charles Dunn testified that he had handled previous transactions with Grubbs, but that he did not handle the one in question, and had no recollection of Grubbs' obtaining the loan involved in this suit.

Dunn stated that there were signs in the business office which contained the same language as that printed on the back of the contract. Dunn said that on previous occasions he had drawn Grubbs' attention to the signs, but that since he did not handle this particular transaction, he did not know whether anyone called Grubbs' attention to the sign on this occasion. There was no evidence that a receipt was given to Grubbs, but the clear inference is that he did obtain a ticket by which he could claim the bracelet.

When Grubbs returned to pay his loan and reclaim his bracelet, he was informed that the bracelet had been taken in an armed robbery, and was therefore not in Dunn's possession. It was later discovered that Ms. Burroughs was involved in the armed robbery of Dunn's business office during which Grubbs' bracelet was taken. By the time that Grubbs returned Ms. Burroughs was no longer employed by Dunn and there is no testimony by her in the record. It was stipulated that she had entered a plea of guilty to armed robbery in connection with the robbery of the Dunn office.

The trial court entered findings of fact and conclusions of law, concluding that the bracelet was worth $8,790 and that Grubbs was indebted to Dunn in the amount of $2,040. The court entered judgment in favor of Grubbs for $6,750.

■ Dunn first contends that it is not liable for the value of the bracelet because of the express provision in the contract that it was not liable for any loss or damage by theft. The type below Grubbs' signature which refers to conditions on the reverse side is in smaller print than the other type in the contract, and there is nothing in the record to indicate that Grubbs' attention was called to this statement that additional provisions were printed on the back. In *Application of Eimco Corporation,* 6 Misc.2d 422, 163 N.Y.S.2d 273, 281[12, 13] (N.Y.Sup. Ct.1957), the court considered a contract which stated above the purchaser's signature that the sale was subject to all of the conditions on the reverse side. The court quoted the following passage from *Arthur Philip Export Corp. v. Leathertone, Inc.,* 275 App.Div. 102, 87 N.Y.S.2d 665, 667 (N.Y. Sup.Ct.1942):

A party should not be bound by clauses printed on the reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated.

*See also,* 17 C.J.S. *Contracts,* § 41 (1963).

There was no evidence that anyone called Grubbs' attention to the printing on the reverse side of the contract, or that Grubbs saw that printing or was aware of it. Absent such evidence, the rule quoted above applies. Thus, the printing on the back of the contract does not exculpate Dunn from liability.

Dunn next contends that although Grubbs' attention may not have been called to the disclaimer of liability at the time that the loan in question was made, the deposition of Charles Dunn disclosed that

Grubbs had applied for loans previously, and that at those times Dunn had called his attention to the posted signs with similar disclaimers of liability. In *Cothren v. Kansas City Laundry Service Co.,* 242 S.W. 167, 168 (Mo.App.1922), the court discussed the affect of a customer's receiving a claim ticket on a previous occasion:

> Limitations of liability, even those permissible under law, "must be contained in or made a part of the original contract of bailment," for that arises upon the delivery of the goods to the bailee, and the later cannot afterward impose conditions nor limit his liability resulting from such bailment.

*See also,* 8 Am.Jur.2d *Bailments* § 147 (1980). There was no evidence regarding how much time had passed since Grubbs' attention had been last called to the signs. The *Cothern* court indicated that provisions limiting liability must be called to the bailor's attention at the time of the bailment in question. This court is convinced that the rule expressed in *Cothern* is sensible and should be followed. Otherwise, provisions called to a person's attention years before could be used without showing that the person was still aware of such limitations. Thus, the fact that Dunn called Grubbs' attention to the signs on previous occasions does not show that Grubbs had knowledge of the disclaimer liability at the time that the loan in question was made.

■ Dunn finally contends that it is not liable to Grubbs because the bracelet was taken in an armed robbery, and that when property is taken by irresistible force, this relieves the bailee of responsibility. Dunn is correct that robbery by force is classified as an irresistible force which will protect a bailee from liability. However, mere theft does not offer such protection. *Nuell v. Forty-North Corporation,* 358 S.W.2d 70, 75[4] (Mo.App.1962).

■ The evidence revealed that Ms. Burroughs was an employee of Dunn at the time that the armed robbery occurred and that as a part of her duties, she had custody of the pledged merchandise, including Grubbs' bracelet. As noted above, Burroughs conspired with the persons who actually committed the robbery and later entered a plea of guilty herself to the robbery. The fact that the bracelet was taken in an armed robbery by an employee of Dunn brings this case within the rule stated in *Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co.,* 252 S.W.2d 108, 113[9] (Mo.App.1952):

> [T]he trend of the modern authorities is toward the rule that the doctrine of respondeat superior cannot be invoked to relieve any bailee of his liability, based on the contract of bailment, for breach of duty to the bailor which he has undertaken to perform through the agent or servant; this is held to be true even though such employee was acting for his own purposes, without authority or contrary to instructions, and notwithstanding the bailee's own freedom from negligence in his selection and retention and in other respects.

This rule was also discussed in *Bowles v. Payne,* 251 S.W. 101, 103[3] (Mo.App.1923):

> [T]hat a master is not liable for crimes or torts committed by his servant without the scope of the employment, and to effect the servant's own purpose, the master is liable where the crime or tort by the servant is in and of itself a violaton of some duty which the master has assumed toward the person thereby injured, and which the master has undertaken to perform through the servant.

The record in this case reveals that as part of Ms. Burroughs' duties as a Dunn employee, she was in custody of items which had been pledged and were being held by Dunn as a bailee. Thus, Dunn undertook its duty to exercise ordinary care of the bailed property through its servant. In committing the armed robbery, or assisting therein, Burroughs violated the duty which Dunn owed Grubbs to exercise ordinary care to hold the bracelet so that it could be delivered to Grubbs when the loan was repaid. Under the well established law in this state as expressed in *Truck Leasing* and *Bowles,* Dunn was not relieved of liability for failure to deliver the bracelet be-

cause the armed robbery was committed with the aid and assistance of its employee with whom it had entrusted the custody of the bracelet.

The judgment is supported by substantial evidence and correctly declared the law and is therefore affirmed.

CRIST, P.J., and DONALD L. MANFORD and MELVYN W. WIESMAN, Special Judges, concur.