*Municipal Court of the City of Boston*

No. 382220

**RUTH POLONSKY**

v.

**UNION FEDERAL SAVINGS
AND LOAN ASSOCIATION**

(October 28, 1955 — March 8, 1956)

*Riley, J.* This action seeks recovery from the defendant bank of the sum of $1,182.44, the total amount that was on deposit in said bank in the names of Ruth Polonsky and Morris Polonsky (husband and wife) from a date no earlier than July 14, 1953 to November 9, 1953.

The evidence discloses that the said account, prior to at least July 14, 1953, had stood in the names of Morris Polonsky and his father as joint depositors, the father having died prior to said date. That on July 14, 1953, Morris Polonsky visited the defendant bank for the purpose of having the account changed to an account in the name of his wife and himself, jointly. That Ruth, his wife, the present plaintiff, did not appear at the bank when her husband opened the joint account in question, but she knew that he was doing so. She left it to him to manage the affair in so far as the bank was concerned and he was representing her for the purpose of opening this account. That she (the plaintiff) never saw the bankbook which was issued in the names of herself and her husband, nor had she ever seen the earlier book held by her husband (Morris) in his name and that of his father, jointly.

That when the plaintiff's husband (Morris) went to the bank and signed a temporary signature card with his own name and the name of the plaintiff (his wife), the bank teller handed him a bankbook, and a permanent form of signature card to take home for signature by his wife and himself; that later he returned with the permanent card bearing both signatures. That when Morris took the bankbook home, he placed it in a drawer with other personal papers and records, and that he did not have reason to look at it again until about six months later, when he had occasion to check up on the existence of the bankbook and found that it was missing; that thereupon he went to the bank and was informed that the account had been closed by withdrawal and was shown the withdrawal slip dated November 9, 1953 bearing the purported signature of Mrs. Ruth Polonsky; that he conferred with his wife (the plaintiff) and that both of them visited the bank, looked at the withdrawal slip and that the plaintiff denied the authenticity of the signature thereon; that the check that was issued on said November 9, 1953 payable to the name Ruth Polonsky, was cashed at the State Street Trust Company upon the endorsement of the female who presented it and endorsed "Ruth Polonsky", and that said person was not the plaintiff.

There was further evidence that the signature "Mrs. Ruth Polonsky" appearing on the withdrawal slip was a forgery; that said slip had been presented by a female; that a teller at the defendant bank compared the signature thereon with the signature carried on file, and, relying upon her judgment as to its genuineness ordered the check to be issued, which check was signed by an officer of the defendant bank.

It appeared in evidence that the bankbook that was issued in the names of Ruth and Morris Polonsky and given to Morris on July 14, 1953, was identical with all other bankbooks issued by the defendant company;

was in the same form as the bankbook which previously had been issued to Morris and his father; and that its form was approved by the Federal Home Loan Bank of Boston, which is the local representative of the Federal Savings and Loan System.

The by-laws of the defendant bank together with the rules and regulations of the Federal Savings and Loan System, and a Home Owners' Loan Act of 1953, as amended, under which law the defendant bank was organized, were all in evidence.

A sample copy of a bankbook of the defendant bank was placed in evidence, particularly the wording appearing on the inside cover thereof: to wit, "This Association shall not be held responsible for money paid out to any person unlawfully presenting this book."

Both Mr. and Mrs. Polonsky were literate persons.

At the close of the trial and before final argument the defendant filed the following requests for rulings of law and the trial judge acted thereon respectively as indicated below:

"1. As a matter of law, the evidence in this case does not warrant a finding for the plaintiff. *Denied.*

2. As a matter of law, the evidence in this case does not warrant a finding that the defendant was negligent. *I do not find that the defendant was negligent.*

3. The account with the defendant bank having been evidenced by a passbook and the said passbook having been presented at the time payment was made by the bank, there can be no liability upon the part of the bank unless the defendant was negligent. *Denied. — See findings and supplementary rulings.*

4. The obligation of a bank in regard to comparison of signatures on a savings account when the savings bankbook has been presented, simultaneously with the request for withdrawal of the fund, is merely to exercise reasonable care in connection with the comparison of signatures. *Denied. — See findings and supplementary rulings.*

5. The legend printed upon the passbook which was issued by the bank to the plaintiff to the effect that 'This Association

shall not be held responsible for money paid out to any person unlawfully presenting this book' was valid and binding as to the plaintiff. *Denied. — See findings and supplementary rulings.*

6. This plaintiff having accepted and retained her passbook issued by the defendant bank, in which there was printed the following language: 'This Association shall not be held responsible for money paid out to any person unlawfully presenting this book' cannot now be heard to say that she did not assent to the said provision as one of her terms of contract with the defendant bank. *Denied. — See findings and supplementary rulings.*

7. The inclusion of a count in tort adds nothing to the defendant's liability: its sole liability in the state of the evidence was to abide by its contract — if it negligently broke its contract with the plaintiff, the rights of the plaintiff must still be in contract. *Immaterial Finding is on contract count.*

8. The provision as to payment to unauthorized persons, appearing in the passbook, does not have to be in the nature of a bank by-law: it is binding on the plaintiff if clearly made known in the bankbook. *Kergald v. Armstrong Transfer Express Co.,* 330 Mass. 254: with citations which contain instances other than By-laws, e.g., *Redpath v. Western Union,* 112 Mass. 71. *Denied. — See findings and supplementary rulings.*

9. The bankbook having been presented to the bank simultaneously with the request for withdrawal, the bank is not liable if a reasonably prudent bank-teller would have considered the signature on the withdrawal slip to be the signature appearing on the membership card. *Denied. — See findings and supplementary rulings.*

## Findings and Supplementary Rulings.

"I find that the funds standing in the joint account of the plaintiff and her husband in the defendant association were paid out by the latter to an impostor who forged the name of the plaintiff to the withdrawal slip which she tendered with the bankbook at the time payment was made to her. Neither the plaintiff nor her husband authorized any other person to withdraw the funds or was aware that the bankbook had been taken from the dresser drawer in their

home where it had been left by the plaintiff's husband."

"In its defense, the defendant relies in part upon the following sentence which was printed on the inside cover of the bankbook: 'This Association shall not be held responsible for money paid out to any person unlawfully presenting this book." There was no evidence before me that any of the printed matter contained in the bankbook ever came to the attention, or was brought to the attention, of the plaintiff or her husband. The circumstances attending the opening of the joint account in question were as follows:"

"The plaintiff's husband went to the office of the defendant and there signed a temporary signature card with his own name and the name of his wife, this card apparently being in the same form as that of the permanent signature card which was introduced in evidence. The account was then opened by the teller, who made appropriate entries on the records of the defendant, transferring into this new account a sum previously on deposit in the name of the plaintiff's husband as survivor of an earlier joint account with his father. Thereafter the teller handed to the plaintiff's husband a bankbook enclosed in the usual type of bankbook envelope and a permanent form of signature card which he was to take home for signature by his wife and himself. Several days later this signature card was returned to the defendant, duly signed by the plaintiff and her husband."

"The signature card signed by the plaintiff contains, among other things, her application for 'a Membership and a Savings Account in the Union Federal Savings and Loan Association and for the issuance of a membership certificate in the approved form.' There is nothing stated on the signature card itself with respect to the effect of payment by the defendant to an unauthorized person who may tender the bankbook. The membership certificate which is

printed in the bankbook, recites that the members of the defendant association hold their savings share accounts 'subject to its charter and by-laws and to the laws of the United States of America.' It was agreed by the parties that there is nothing in the charter or by-laws of the defendant association or in the laws of the United States which would absolve the defendant from liability to a depositor if it makes payment to an unauthorized person who presents the bankbook of the depositor."

"I rule that the rights of the parties herein are governed by the terms of the contract which was made when the account was opened, and that the language on the inside cover of the bankbook which purports to absolve the defendant from responsibility for money paid out to an unauthorized person presenting the bankbook was not a part of that contract. I do not find that that language ever came to the attention of the plaintiff, and I rule that she was not bound by it." and found for the plaintiff on Count 1 of the declaration.

The judge plainly denied the defendant's requests numbered 1, 3, 4, 5, 6, 8 and 9 and referred reader to his Voluntary Ruling.

Requests numbered 2 and 7 were not acted upon directly and must be deemed to have been denied.

Undoubtedly the trial judge by his appended notation to request numbered 2, "I do not find the defendant was negligent", must be understood to mean that the request was denied because of being predicated on the assumed fact of negligence which he did not find. The request itself is directed to the non-existence of any evidence of negligence as matter of law, and should have been granted unless the trial judge on the evidence found negligence or lack of due care on the part of the defendant as matter of fact. *Donlan v. Provident Inst. for Savings*, 127 Mass. 183.

Similarly, his notation, "Immaterial. Finding is on contract count", appended to request numbered 7, appears to be a reiteration that there is no evidence of negligence. The ruling, however, coming as it does before the general finding and the request as written being a good statement of law, it should not have been denied. Negligence or lack of due care, commonly incidental to tortious acts, may likewise be the measuring stick of responsibility or liability under a contract. *Donlan v. Provident Inst. for Savings*, 127 Mass. 183.

It is clear to us that the action on the two requests just discussed together with the trial judge's findings of fact and his voluntary ruling which apparently is intended to cover the question posed in all of the defendant's requests, presents his view, to wit; "This is what happened, and irregardless of whether the bank be negligent or lacking due care, the fact that the plaintiff was never advised of the language appearing in the bankbook, together with the presentation of a forged withdrawal slip and the bankbook, makes the bank responsible in damages to the plaintiff."

Accordingly we must focus our attention on the voluntary ruling as related to the denial of the defendant's requests.

The trial judge properly ruled that the rights of the parties herein are governed by the terms of the contract which was made when the account was opened, but then erroneously ruled, we believe, that the language on the inside cover of the bankbook, "This Association shall not be held responsible for money paid out to any person unlawfully presenting this book", was not a part of that contract, because of the fact that that language never came to the attention of the plaintiff and therefore that she was not bound by it, as matter of law.

There appears to be no dispute but that the wording in issue did appear on the bankbook that was

handed to the plaintiff's husband, Morris, on July 14, 1953 when the account was opened. Admittedly, from the evidence appearing in the report, he, Morris, was her agent for the purpose of this account; she, herself, never having seen the bankbook and knowing nothing about the terms of the contract of deposit except what he (her agent) saw fit to tell her. Being her own agent he did owe her the duty of disclosure. By accepting the bankbook, Morris, thereby assented to the regulation himself and likewise assented to it as agent for his wife. *Goldband v. Commr. of Banks,* 245 Mass. 143; 150; *Tremont Trust Co. v. Burack,* 235 Mass. 398; 401; *Gifford v. Rutland Savings Bank,* 63 Vt. 108; 11 L.R.A. 794, 795. If he accepted the bankbook and didn't see fit to read it, he is nevertheless bound by its terms and he has also bound the plaintiff for whom he was acting as agent. *Long v. Agricultural Ins. Co.,* 257 Mass. 240, 243; *Cass v. Lord,* 236 Mass. 430, 433.

The object of the regulation was to place the burden upon the depositor to keep his book safely and to authorize the bank to rely upon presentation of the bankbook as its security against fraud. *Wall v. Provident Inst. for Savings,* 3 Allen 96, 97-98; *Levy v. Franklin Savings Bank,* 117 Mass. 448, 450; *Goldrick v. Bristol County, Savings Bank,* 123 Mass. 320; *Wasilauskas v. Brookline Savings Bank,* 259 Mass. 215.

It was the plaintiff's only voucher against the bank which in the absence of fraud or negligence on its part, was entitled to be protected against either the wilful or negligent omission of the depositors to know the contents of the bankbook they had accepted. The plaintiff having entered into this contract herself or through an agent, in the absence of fraud, is conclusively presumed to understand the terms and legal effect of it, and to consent thereto. *Kergald v. Armstrong Transfer Express Co.,* 330 Mass. 254.

The literacy of the plaintiff is not in issue and of no particular consequence. *Paulink v. American Ex-*

*press Co.,* 265 Mass. 182, 185; *Bulakowski v. Phila. Savings Fund,* 270 Pa. 538.

While it has not been argued that the plaintiff did not have a reasonable opportunity to become aware of the regulation in the bankbook, it may not be amiss to observe, in view of the voluntary ruling, that a period of at least six months (from the time Morris received the bankbook, until he discovered it missing), should have been sufficient and therefore a reasonable time within which to become acquainted with its contents, as matter of law. *Mowles v. Boston Ins. Co.,* 226 Mass. 426, 429.

There being error in both the denial of the defendant's requests for rulings of law, and the voluntary ruling of law by the trial judge, and being satisfied that all the material facts necessary for determining the question in dispute are now before us, we direct that judgment for the defendant be entered. *Elliott v. Warwick Stores, Inc.,* 329 Mass. 406.

Robert D. O'Leary, for the plaintiff.

David H. Fulton, for the defendant.