Maurice Wahl, J.
The plaintiff seeks to recover a judgment against the defendant predicated upon purchases made pursuant to the terms and conditions of a credit card issued by the plaintiff to the defendant on or about June 11,1959.
The plaintiff is a major oil company engaged in the production and distribution of petroleum and related products throughout the United States. Dealers operating gas stations and engaged in private enterprise retail the petroleum products of the plaintiff in the operation of their stations, and by means of dealer agreements with the plaintiff are authorized to vend products of the plaintiff.
Texaco, Inc., as a device to stimulate sales, issued a credit card enabling the holder to purchase its products at any authorized Texaco station. The practice is that the party to whom the card issues thereafter receives a monthly statement covering all purchases made in prior months.
The credit card issued by the plaintiff is made of plastic and measures 3% inches by 2% inches. Plaintiff’s name appears conspicuously upon the face of the card and the name of the customer appears embossed on the face of the card in prominent raised letters.
The face of the card also contains a signature block in which the customer is to sign his name. Directly above the customer’s signature block, the words “Issued subject to conditions on reverse side, Texaco, Inc. ’ ’ are inscribed.
On the reverse side of the card the agreement between the customer and the company is contained and the relevant portion appears as follows:1 ‘ This credit card confirms the authorization of credit during the period shown, to the person, corporation or firm whose name is embossed on the reverse side thereof. Such person, corporation or firm assumes full responsibility for all purchases made hereunder by any one through the use of this credit card prior to surrendering it to the company or to giving the company notice in writing that the card has been lost or stolen. Retention of this card or use thereof constitutes acceptance of all the terms and conditions thereof.”
Upon the defendant’s application, a card was issued to him by the plaintiff, bearing a certain number with an expiration date of the last day of May, 1961.
Thereafter the defendant was deprived of the card by theft, but failed to report the loss to the plaintiff. A dealer marketing *753 plaintiff’s products picked up the card on or about December 23, 1960 at Chicago, Illinois, where it had been tendered by an illicit possessor, for the purpose of purchase of petroleum products. The dealer then notified the plaintiff that the card had been reclaimed, and plaintiff in turn notified the defendant that his card was being used by another in the Chicago area. The plaintiff then confirmed a telephone conversation with the defendant by a letter dated January 23,1961.
Written communications were received by plaintiff from defendant in connection with the loss of the credit card, but all of said communications were subsequent to the last charge made upon the credit card.
From the date the card was missing to the date of the telephone notification by plaintiff to defendant of its recovery, some $569.98 in charges were made with the said credit card, which charges constitute the subject of this action.
The issues raised here are whether the defendant is liable, pursuant to the terms and conditions as set forth on the reverse side of the credit card, for the unauthorized purchases made by another person, prior to notification to the plaintiff, by the defendant, of the loss of the credit card.
The defendant bases his defense primarily upon the cases: Matter of Eimco Corp. (6 Misc 2d 422) and Union Oil Co. of Calif. v. Lull (220 Ore. 412).
In the ease of Eimco Corp. (supra) the court there referred to the holding in Matter of Arthur Philip Export Corp. (Leatherstone, Inc.) (275 App. Div. 102) "which held that a party should not be bound by clauses printed on the reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated, but in the same case the court recognized the fact that whether the intent of the parties was to have the matters on the face of the contract include the matters on the reverse side is a question to be decided on the trial.
Further, in the Eimco case the sale and purchase were not pursuant to any formal contracts jointly executed by the parties, but were initiated by written orders on its printed form by Eimco and accepted by Derring on its printed form. The procedure followed is not the same or even similar to the procedure followed in the case at issue. In the ease at bar, the defendant submitted an application to plaintiff requesting the issuance to him of a credit cardi The application contained none of the terms of the agreement between the parties but amounted to a mere invitation, to do business. At this point, neither the plaintiff nor the defendant were bound by any contractual agreement. *754 The contractual agreement followed later when the plaintiff issued its credit card to the defendant to be accepted by him in accordance with the terms and conditions therein set forth, or, at his option, to be rejected by him. Such rejection need take the form of returning the card, or simply its nonuse. The issuance of the card to the defendant amounted to a mere offer on plaintiff’s part, and the contract became entire when defendant retained the card and thereafter made use of it. The card itself then constituted a formal and binding contract. In the Eimco case there was a question of fact as to whether such a formal contract was ever entered into.
The questions raised in the case now at issue were discussed at great length in the case of Union Oil v. Lull (supra, p. 416). In that case, the words “ The customer * * * guarantees payment * * * to anyone presenting this card, guaranty to continue until the card is surrendered or written notice is received by the company that it is lost or stolen ” are used.
We recognize a distinction between the case at bar and the Lull case (supra), in that the agreement between the parties is not one of “ guaranty ” as the same is used in the Lull case, but that of an original undertaking in which the defendant made it his own responsibility for any use of the card. In the Lull case the court held that the credit card transaction created a suretyship contract between the parties, making the issuee a gratuitous indemnitor, with the only consideration moving to him being the convenience of the use of the credit card. It further stated that the company benefited to the extent of getting a new user of its products. The 6 6 responsibility” portion of the card was therefore to be interpreted in this light, bearing in mind the further hazard that the indemnitor had no control over the user of the lost card, and would impress upon the company the duty to use reasonable diligence in the transactions where the credit card is used.
The agreement expressed in the provisions of the credit card in the case at bar, are not unreasonable. The plaintiff assumes the risk of all loss after it receives notice of the loss or theft of the credit card; the defendant assumes the risk of loss prior to such notice.
With the increasing use of the credit card, and its growing importance to the economy, the imposition of a high duty of diligence upon the major oil companies in general, most of whom use the same or similar systems of credit card transactions, would result in an impairment of an important segment of our economic structure. We must take into consideration that for the most part, the dealers to whom the cards are presented are *755 independent contractors engaged in private enterprise. The plaintiff undertakes to honor credit card purchases by persons presenting them to the individual dealers for credit. In each such transaction however, the plaintiff is in no way involved; it had previously agreed to purchase, from the dealer, such charges at par, and the plaintiff has no control of either the dealer or the purchaser using the card, until the credit charge invoice actually reaches the company for payment to the dealer on presentation by him. Accordingly, the negligence of the card holder becomes most important. The intent of the parties is that in the event of the issuee’s or obligor’s loss of his card, or it having been stolen, that he be required to treat his credit card with at least the same importance, or perhaps greater importance than he would with his currency. Assuming the defendant were to have lost some currency, he alone bears the risk of loss, and his loss is fixed by the amount of currency he lost. Should he, however, lose his credit card, the amount of loss would not be fixed, and the risk of loss is not only borne by him, but also by the company, when he actually complies with the conditions of the issuance of the card to him. This is a risk the company is apparently willing to assume, and the only requirement by the company is that the card holder exercise a proper degree of care in the handling of his card. Unless actual notice of loss is given to the company it can have no way of knowing of such loss, and tojjequire some 30,000 dealers to suspect the loss of any particular credit card, and use diligence against its abuse, is not within the requirements of plaintiff as the issuer of the credit card. UJnlike credit cards used in the restaurant and hotel fields, where personal use to the issuee is usually restricted, any holder of the credit card can use the same.
The Legislature of the State of New York took cognizance of the problem presented by the issuance and use of credit cards by the enactment of sections 511, 512, and 513 of the General Business Law, as amended effective January 1, 1962. Section 512 provided in part as follows: “ A provision to impose liability on an obligor for the purchase or lease of property or services by the use of a credit card after its loss or theft is effective only if it is conspicuously written or printed in a size at least equal to eight point bold type either on the card, or on a writing accompanying the card when issued or on the obligor’s application for the card. ’ ’
The Legislature acknowledged the validity of the agreement between the parties to the action as it existed on the date when the credit card was issued by the plaintiff to the defendant, and imposed a condition on subsequent credit cards that the said *756 condition be printed in eight-point bold type, which is the equivalent of newspaper print.
It is the opinion of this court that the application to the plaintiff, by the defendant, for the issuance to him of a credit card, and the acceptance by him and use thereafter of the card, constitutes the offer and acceptance resulting in an entire contract.
The liability of the defendant to the plaintiff arises out of the contract contained on the credit card itself.
The courts in other jurisdictions have, on various theories, sometimes found the obligor on a credit card liable for loss to the issuer resulting from the loss or theft of the card, even without any contractual provision imposing such liability. (See, e.g., Comment, The Tripartite Credit Card Transaction: A Legal Infant, 48 Calif. L. Rev. 459, 481-488 [1960]. See, also, Magnolia Petroleum v. McMillan Co., 168 S. W. 2d 881 [Tex. Civ. App., 1943].)
The sole question remaining is as to the requirement of proof of delivery of the merchandise purchased pursuant to the card. It is the custom in the trade that the final act after presentation of the credit card to the dealer for the purchase of the products ordered is the. imprinting on an invoice by the use of the credit card in a device called an imprinter. All purchases or services have been fully completed at that point and the purchaser is about to leave the premises of the dealer, when he presents the credit card for such imprinting and invoicing and he departs, after usually affixing his signature to the invoice. Since this is the final act of the user of the card, it is the opinion of the court that the invoices bearing the imprint of the credit card, and bearing a signature, constitute prima facie evidence of delivery or performance of the services enumerated upon the card. Here, the evidence of the damage sustained by the plaintiff was not seriously challenged. If it were, the plaintiff could adduce proper proof of the items obtained by the thief.
Judgment for the plaintiff in the sum of $569.98.