Abraham A. Berry, J.
Plaintiff sues to recover the sum of $770.71 for merchandise purchased on presentation of a credit card issued by plaintiff to defendants.
Originally an application for the credit card was made by defendant Madeline Vitiello. The card was issued in the name of her husband, defendant Sam F. Vitiello. He acknowledged *397 that he had authorized his wife to obtain the credit card, that he knew of its existence, and that purchases were made in his name. Prior to October 15, 1964, defendant conceded having made purchases on which there was a balance due plaintiff in the sum of $85.30. On that day, her purse was stolen including the contents, amongst which was the credit card in question. On October 15, three purchases were made by the thief, and on October 16 and 17, 18 additional purchases wrere made amounting in all to the sum of $685.41.
Immediately upon discovering the loss of the purse, the police were notified. A detective from the local precinct called at defendants’ premises and advised them to notify plaintiff of the loss of the card. Defendant made a telephone call to plaintiff’s place of business at which time they were instructed to send a written communication which they did on October 18,1964.
The application, in effect, a contract between the parties, was received in evidence. It provided: “If card holder is a married woman, Uni Serv, at its option, may carry card holder’s account in husband’s name upon responsibility of husband and wife.”
Amongst other provisions, it contained the following: “If uhi-card is stolen or lost, card holder will notify um serv in writing, and until uni serv received such notification, card holder will continue to be responsible for any use of the card.”
The application also contained the following: “ the amouht of credit applied for uhder this plah is: ” Underneath this line is “ Check One.” Then follow boxes which contain the following: “$250, $500, $750, $1,000, or fill in higher amount.” The check mark is in the box alongside the sum of $250.
It was established at the trial that the portion of the application calling attention to the obligation if the card was stolen or lost was in 8-point Futura light with 8-point Futura demibold. The term demi-bold has reference to the type used. It is sufficiently outstanding so that attention is called to its existence on the application contract.
Section 512 of the General Business Law was passed by the Legislature in 1961 (ch. 549) and became effective January 1, 1962. It reads as follows: “A provision to impose liability on an obligor for the purchase or lease of property or services by use of a credit card after its loss or theft is effective only if it is conspicuously written or printed in a size at least equal to eight point bold type either on the card, or on a writing accompanying the card when issued or on the obligor’s application for the card, and then only until written notice of the loss or theft is given to the insurer. Such a provision either in a credit *398 card issued prior to the effective date of this article, or in a writing accompanying such a card when issued, or in the obligor’s application for such a card is effective, on or after the effective date of this article, only if the issuer mails to the obligor, properly addressed, written notice of the provision conspicuously written or printed in a size at least equal to eight point bold type.”
Plaintiff relies on the recent case of Texaco, Inc. v. Goldstein (34 Misc 2d 751, 755, affd. 39 Misc 2d 552) in which the court stated: 1 ‘ The intent of the parties is that in the event of the issuee’s or obligor’s loss of his card, or it having been stolen, that he be required to treat his credit card with at least the same importance, or perhaps greater importance than he would with his currency. Assuming the defendant were to have lost some currency, he alone bears the risk of loss, and his loss is fixed by the amount of currency he lost. Should he, however, lose his credit card, the amount of loss would not be fixed, and the risk of loss is not only borne by him, but also by the company, when he actually complies with the conditions of the issuance of the card to him.”
Judge Wahl followed the ruling in Union Oil Co. of Cal. v. Lull (220 Ore. 412, 421-422) where the court said: “ The bargain expressed in the provisions of the card is not an unreasonable one. Plaintiff takes the risk of loss for all purchases made after it receives notice of the loss or theft of the card; defendant assumes the risk of loss prior to such notice. The parties share the risk of loss and the cardholder can minimize his risk by the careful custody of his card and by promptly notifying the company of the card’s loss or theft.” See, also, Magnolia Petroleum Co. v. McMillan, 168 S. W. 2d 881 [Tex. Civ. App., 1943],)
The case relied upon by defendant is Allied Stores of New York v. Funderburke (52 Misc 2d 872) in which defendant claims the court arrived at a different result.
However, Judge Birns distinguishes between the facts in that case and the Texaco decision to which reference has been made when he stated (p. 877): “It is to be noted that the relationship between the plaintiff and the defendant in this case is a modest two-party arrangement entitling the user to credit at the plaintiff’s store and no other. It is unlike the ‘ omnipotent credit card * * * used to procure U-drive automobiles, airline tickets, luxurious hotel suites, food and drink, multifarious items of men’s wear, a silver mink stole for a newly acquired girl friend, and a puppy dog ’ for the sole user, where a credit card is characterized as ‘ like an Aladdin’s lamp and you didn’t even have to rub it’ (Miraglia, My $10,000 Credit *399 Card Binge, Life Oct. 26, 59, pp. 53-54, as cited in comment, The Tripartite Credit Card, supra, p. 459). It is the use of this latter card, with broad, diversified application and which involves three or more parties — issuers, holders, users, independent retailers and thieves — which has caused courts to fashion the rule that the holder of a credit card is responsible, even in the absence of an express contractual provision, for all unauthorized purchases except if he can establish negligence on the part of the retailer responding to the presentation of the credit card (Union Oil Co. of Cal. v. Lull, supra.)” In other words, the Allied Stores case differentiates between a credit card issued by a single store for use therein and a credit card which is to be used generally by others than the immediate issuer of the card.
Defendant also contends that his liability should be limited to the sum of $250, the amount of credit applied for in the contract between the parties and that it would be unjust to hold the obligor for more than the amount agreed upon between them. Forgetting for the moment that these purchases were made by a thief, and assuming arguendo that the purchases were made by defendant in excess of the agreed limitations of credit, certainly he could not escape his liability because there was an agreement of limitation of credit. Moreover, the contract between the parties provided for the continuing obligation of the defendant for the use of the card until such time as plaintiff received notification in writing of the loss or theft of the card.
The court holds that defendant expressly agreed and thereby became obligated to pay for any purchases made on the credit of the card until plaintiff received notification of its loss. It is unfortunate that defendant did not immediately send a telegram to plaintiff advising it of the loss of the card. In that event defendant would not be accountable for the great bulk of the purchases made by the thief, and the loss would be sustained by the plaintiff.
Judgment is directed for plaintiff against defendants in the sum of $770.71 with interest.