*Northern District*

No. 7150

## LECHMERE TIRE & SALES COMPANY

v.

## JERALD D. BURWICK

Argued: Oct. 1, 1969 - Decided: Feb. 20, 1970.

*Present:* Brooks, P.J., Parker, Owen, J.J.

Case tried to *Feloney, J.,* in the Third District
   Court of Eastern Middlesex No. 5275 of 1967
   *Brooks, P.J. This is an action of contract*
to recover for merchandise sold to the holder

of defendant's credit card in the amount of $611.78 with interest from November 30, 1967.

Count 1 is for goods sold and delivered.

Count 2 is for breach of an agreement based on acceptance of a credit card under which defendant was to be responsible for all purchases through its use.

The answer is general denial, payment, statute of frauds, violation of G.L. c. 140A, § 6, mutual mistake, contributory negligence.

*At the trial there was evidence as follows:* Plaintiff operates two department stores located in Cambridge and Dedham in the Commonwealth of Massachusetts.

Defendant is a certified public accountant and an attorney at law. On April 30, 1964 he signed a preprinted credit application provided by plaintiff for the purpose of obtaining a credit card for use in purchasing merchandise from plaintiff's store.

On the credit application appeared the following: "(I) *We agree* to surrender credit plate on request and *to be responsible for all purchases through its use until surrendered or until the company has been notified of its loss or theft in writing.*" Defendant testified that at the time of signing the application, he read the above clause and that he was a member of the Bar but not a practicing attorney.

Subsequently defendant received from plaintiff a credit card, which he signed in the space designated for his signature.

Defendant and his wife used the credit card for purchase of merchandise from plaintiff on many occasions prior to October 11, 1967. On that date defendant received a statement of his account from plaintiff dated September 30, 1967 showing purchases of merchandise charged to defendant's account in the amount of $153.22. On said date of October 11, 1967 defendant *orally* notified plaintiff that the credit card was lost, missing or stolen. He was notified at that time that additional charges had been made to defendant's account totaling $611.78, involving approximately fifteen separate transactions.

On October 17, 1967 defendant notified plaintiff in writing that the card was lost, stolen or missing.

Examination of sales slips disclosed that defendant's alleged signatures were forged. Examination of signatures on the sales slips showed defendant's name misspelled in several instances. Also, it appeared that on purchase slips in amounts larger than $15.00 there was approval by the credit personnel of the plaintiff without seeing the sales slips, approval being secured by telephone.

There was also evidence that signatures on the purchase slips were not compared with the signature on the credit card.

Defendant testified that he did not make the purchases in question, nor received merchandise, nor authorized anyone to do so in his behalf.

Defendant filed thirteen requests for rulings of which Nos. 2, 3, 4, 5, 8, 9, 12, 13 were allowed, some with qualifications. Requests were denied as follows: No. 1, 6, 7, 10, 11. For sake of brevity citations are omitted.

The requests and the court's disposition were as follows:

1. A Credit card issuer, as a matter of law, owes a duty of care to its card holders to ascertain the identity of a user of the credit card. *Denied.*

2. Where a contract is an "adhesion" form of contract, wherein the person executing same has no choice as to its content other than to accept or reject the contract in its entirety then, as a matter of law, the said contract is strictly construed against the writer or drawer of the said contract. *Allowed.*

3. As a matter of law, there cannot be "liability without fault" on the part of the defendant. *Allowed.*

4. "As between innocent parties", as a matter of law, he who makes the loss possible should bear the consequences. *Allowed.*

5. Where a contract is an "adhesion" form of contract, wherein the person executing same has no choice as to its content other than to accept or reject the contract in its entirety, and wherein an ambiguity is latent or manifest, then, as a matter of law, the contract is strictly construed against the writer or drawer of the contract. *Allowed.*

6. Where a contract action arises out of and damages are based upon that which is actually a tort for negligence against the defendant, then, as a matter of law, the defense of contributory negligence is available to the defendant. *Denied.*

7. Where the defendant is answerable for the wrongdoing of another, then, as a matter of law, the plaintiff owes the defendant a duty of reasonable care, because the defendant is a "gratuitous surety." *Denied.*

8. Where the defendant agrees to be answerable for the wrongdoing of another, such promise, as a matter of law, must be in writing, and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized. *Allowed.*

9. If the Court, as a matter of law, finds the contract or any clause thereof to be unconscionable at the time it was made, the Court may refuse to enforce the contract to avoid an unconscionable result. *Allowed.*

10. The credit card issuer owes the card holder, as a matter of law, a duty of reasonable care to protect the said holder from unnecessary charges, and the card holder could not be held to the terms of a contract until such due care is shown. *Denied.*

11. Where a contract states that the promisor be "responsible for all purchases through its (credit card) use ...", as a matter of law, the word purchases is defined as the transmis-

sion of property from one person to another by voluntary act and agreement, founded on valuable consideration. *Denied.*

12. As a matter of law, in Massachusetts, the word "purchase" means the act of acquiring property by the payment of the price. *Allowed.*

13. A person who falsely or fraudulently identifies himself as the person to whom a credit card was issued and by such trick obtains goods from another, as a matter of law, is not a purchaser by legal definition of the word purchaser. *Allowed.*

The Court ruled as follows on the defendant's requests for rulings of Law:

1. *Denied.* I rule that the issuer of a credit card owes a duty to the card holder, to act in good faith in accepting the card when goods are obtained in a credit transaction. I find that the plaintiff and its employees acted in good faith in this case.

2. *Allowed.* See other rulings.

3. *Allowed.* However, the defendant was obliged by his contract to protect himself against unauthorized use of the credit card by guarding it against loss or theft and by ascertaining regularly that the had the card in his possession. I rule that he is liable to the store for the goods which were wrongfully obtained by an imposter, since he failed to notify the store of the loss or theft of the card.

4. *Allowed.* I find that the loss would have been impossible if plaintiff had maintained

possession of the card, or if he had ascertained systematically that he had possession of it.

5. *Allowed.* See other rulings.

6. *Denied.* I rule that the relationship is governed by the law of contracts. See other rulings.

7. *Denied.* I rule that the parties are bound by the terms of their contract and that the further duty of the store is to act in good faith in delivering goods to the person who presents a credit card.

8. *Allowed.* I rule that the credit application which the defendant signed satisfies the Statute of Frauds.

9. *Allowed.* I do not find the terms of the contract to be unconscionable. I rule that any further modification of the obligations under as stated in the previous rulings.

10. *Denied.* I rule that the obligations are such a contract is a legislature matter.

11. *Denied.* I rule that the plaintiff's customer is liable for purchases made by an impostor if the store acts in good faith.

12. *Allowed.* See prior rulings.

13. *Allowed.* See prior rulings.

The defendant claims to be aggrieved by the denial of rulings 1, 6, 7, 10 and 11 and by the conditional allowance of rulings 3, 4, 8 and 9 and the equivocal allowance of rulings 2, 5, 12 and 13.

The invention and introduction of the credit card into business transactions have opened

up a new path in an old field previously occupied and served by credit coins and plates. Each one of these devices is intended to make shopping more convenient for the customer. However, as in the case of some other modern conveniences, they have their drawbacks. They lend themselves to abuse and subject the issuer and the holder to liability which can be quite expensive.

The modern credit card is mainly of two kinds. It can be used in connection with purchases to obtain credit at more than one location. This is a type recently becoming fashionable with banks, enabling the holders to purchase at numerous stores. The other type of card limits the purchase and credit to the card issuing store as in the present case.

The law on the subject is not too clear throughout the country. No Massachusetts case precisely in point has been called to our attention.

The legal aspects of credit cards were discussed in 15 ALR3d beginning at page 1086. Some of the pertinent sections are as follows at p. 1088:

> "While there are not many cases actually deciding the point, the more recent cases recognize that the party to whom a credit card, plate, or coin is issued should not ordinarily be held liable for unauthorized purchases made thereon by a third party, in the absence either of a contract

specifically providing for liability, or some degree of fault on the cardholder's part.

"If there is a contract providing for his liability, however, the holder of the credit card may be held liable for unauthorized purchases. Moreover, if the person to whom the card is issued shows a certain degree of carelessness or a lack of good faith which results in unauthorized purchases by a third party, he may be held liable even if there is no contract. The same principle has been applied where the issuer of the card, his agent, or his subsidiary dealer, is either negligent or exhibits bad faith in some manner. In these situations the holder of the card is not liable even if there is a contract providing for liability."

The article cites among other cases *Thomas* v. *Central Charge Service, Inc.*, —— DC App. —— (1965) 212 A2d 533. Thomas had received a credit card from Central Charge Service, Inc. The card was lost or stolen. Purchases were made on the basis of the card which had never been signed by the holder. The credit application, which had not been signed, contained no provision binding the holder to pay for unauthorized purchases or to promptly report a lost or stolen plate. The trial court found for Central Charge Service. On appeal by defendant Thomas the judgment was reversed by the court of appeals which held that defendant

was not expressly or impliedly liable under the credit application for unauthorized purchases. The court said at p. 534:

"We do not think, however, that a promise to pay for unauthorized purchases, restricted even to purchases made prior to notifying the company of the card's disappearance, can fairly be implied from the described relationship between these parties ... Whatever the rule should be when a customer expressly binds himself by contract to promptly report a lost or stolen credit card, we are satisfied that *on the facts of this* case the cardholder should not be held liable."

In *Wanamaker* v. *Megary,* 24 Pa. Dist. 778, on a somewhat different theory judgment was rendered against the holder of a credit card on the ground that the holder, having lost her credit card, together with her address papers, was the one who made the loss possible and should therefore bear the loss. The court treated the credit card as a negotiable instrument, absolving the department store of any fault since it accepted the coin in the course of business for value without notice.

In several instances the case has gone off on the question of negligence on the part either of the issuer or the holder of the credit card. In *Union Oil Company* v. *Lull,* (1960) 220 Ore. 412 the court held it to be a jury question whether the obvious fact that the license plate on the

imposter's car was from a different state from the residence of the holder listed on the credit card was sufficient to put the issuer's dealers on inquiry concerning a possible misuse of the card. To same effect, *Lit Bros. v. Haines,* 98 N.J.L. 658. In other cases the bad faith of the parties was at issue. *Magnolia Petroleum Co. v. McMillan,* (1943 Tex. Civ. App.) 168 SW2d 881.

In *Texaco, Inc. v. Goldstein,* (1962) 229 NYS 2d 51, Affirmed 241 NYS 2d 495 the holder of the card had lost it but failed to notify plaintiff. An unknown third party made purchases on the strength of the card. The court held the customer liable pursuant to the conditions set forth on the reverse side of the card reading as follows:

> "Such person ... assumes full responsibility for all purchases made hereon by anyone through the use of this credit card prior to surrendering it to the company or giving the company notice in writing that the card has been lost or stolen." 229 NYS 2d 51, 53; Affirmed 241 NYS 2d 495.

The court further said:

> "... The application to the plaintiff by the defendant ... and the acceptance of the card and his use of it equals the offer and acceptance resulting in an entire contract." 229 NYS 2d 51, 56.

In a subsequent case, *Uni-Serv. Corp. v. Vitiello,* (1967) 278 NYS 2d 969 wherein the

*Goldstein* case was cited with approval, the court held that the defendant expressly agreed and thereby became obligated to pay for any purchases made on the credit of the card until plaintiff received notification of its loss.

In this case the purse of the defendant, credit card holder, containing her credit card was stolen on October 15, 1964. On the same day and three days thereafter, the thief made purchases totaling $685.41. Defendant communicated with the plaintiff, the credit card issuer, on October 18th.

We quote from the opinion in the *Vitiello* case, 278 NYS 2d 969 at pp. 970, 971:

"If UNI-CARD is stolen or lost, cardholder will notify UNI SERV in writing, and until UNI SERV received such notification, cardholder will continue to be responsible for any use of the card."

The application also contained the following: "THE AMOUNT OF CREDIT APPLIED FOR UNDER THIS PLAN IS:" Underneath this line is "Check One." Then follow boxes which contain the following: "$250, $500, $750, $1,000, or fill in higher amount." The check mark is in the box alongside the sum of $250.

Under the New York law ¶ 512 of the General Business law (Chap. 549), passed in 1961, it is required that a certain size type be used on the application or credit card.

. The court quoted from *Texaco, Inc.* v. *Goldstein,* 229 NYS2d 51 as follows:

"The intent of the parties is that in the event of the issuee's or obligor's loss of his card, or it having been stolen, that he be required to treat his credit card with at least the same importance, or perhaps greater importance than he would his currency. Assuming the defendant were to have lost some currency, he, alone bears the risk of loss, and his loss is fixed by the amount of currency he lost. Should he, however, lose his credit card, the amount of loss would not be fixed, and the risk of loss is not only borne by him, but also by the Company when he actually complies with the conditions of the issuance of the card to him."

The judge in the *Vitiello* case quotes from the decision in *Union Oil Company of California* v. *Lull*, 220 Ore. 412, pp. 421-422 where the court said:

"The bargain expressed in the provisions of the card is not an unreasonable one. Plaintiff takes the risk of loss for all purchases made after it receives notice of the loss or theft of the card; defendant assumes the risk of loss prior to such notice. The parties share the risk of loss and the card holder can minimize his risk by the careful custody of his card and by promptly notifying the company of the card's loss or theft."

Defendant relies heavily on another New

York credit card case, *Allied Stores of New York, Inc.* v. *Funderburke*, 277 NYS 2d 8. This case was brought under the same statute as the *Goldstein* case which the court held relieved the cardholder of liability where because of un-. awareness of the card's loss, he failed to notify the card issuer. The finding was for defendant partly on the ground that the court found no fault with the credit card holder for not notifying the card issuer of its loss and partly because plaintiff's business conduct contributed to the card's loss. The court said at pages 14 and 15:

> "Two hundred thirty-seven sales slips bearing forged signatures were permitted to accumulate in a thirty-day period. Under the data-processing procedures then in use in plaintiff's store, if the customer's account balance exceeded $200 a 'spill-out' was to occur, indicating purchases over and above the limit provided by the credit agreement. Plaintiff argues that it was unable to minimize defendant's liability until it sorted and collected all outstanding sales slips and processed them through its data-processing equipment. Only then did suspicions arise that something was amiss and it summoned its customer, whom it now sues.
>
> "While it may be imperative in this age of modernization for mercantile establishments to embrace, compress and sort in-

formation from differing departments through the use of electronic data-processing equipment, it is manifestly unfair to shift the burdens of its inadequacies or failures to the innocent consumer whose status, in this modern day, remains unchanged. It is immaterial whether the defendant is the sole customer or is one of one and a half million customers to whom credit cards have been issued by plaintiff . . .''

''While a vendor granting credit status to a customer assumes the risk that it may not be paid for goods, it issues credit in order to enlarge its reservoir of prospective sales. However, there is a concurrent duty owing from the vendor to the customer that it will not permit this credit status of the cutomer to be abused. Thus I must conclude that under common law principles of tort law applicable plaintiff has established no right to a recovery.''

The latest case to come to our notice is *Sears Roebuck & Co.* v. *Duke,* (1969) 441 SW 2d 521. This was a suit to recover purchase price of merchandise obtained through unauthorized use by an unknown person of a credit card issued to and accepted by defendant. In order to procure the credit card, defendant Waldo Duke signed a ''Sears Revolving Charge Account Agreement.'' A jury found that Duke was not negligent in the loss of his card nor in the fail-

ure to report the loss to Sears. The court said at p. 523:

"By that agreement Duke did more than promise to pay for merchandise he purchased. He promised to pay for 'all purchases made on my Sears revolving Charge Account identification.' The meaning we give to these words is that Duke will pay for *all* sales made by Sears to a purchaser identifying himself by the use of the credit card ... Duke further argues that if Sears wanted the agreement to have so drastic an effect as to bind him to pay for unauthorized purchases, Sears should have expressly so stated on either the agreement or the credit cards. We believe this to be the meaning of the agreement, and we do not regard this result to be so surprising in this credit card age .... After a holder accepts the card or agrees to pay for purchases made through its use, the risk of misuse is his unless and until he notifies the issuer otherwise. The holder can destroy his card if he feels that this is too great a burden. But if he is to carry it about, he must guard it as he does his currency if he is to avoid the expense of use by an imposter. If it is lost or stolen, by notifying the issuer, the holder shifts the risk of misuse back to the one who created the device." *Texaco, Inc.* v. *Goldstein,* 229 NYS2d 51.

On the question of identification, the court has this to say at p. 524:

"We hold that the seller need not demand more identification than the credit card as a matter of normal procedure. This is the function of the credit card, and it should be considered satisfactory evidence of identity of the holder or authorized user, unless the appearances or circumstances would raise a question in the mind of a reasonable seller. Proof that the seller did fail to use ordinary care in this respect is a defense to the liability of the holder of the card, and the burden of proof should be placed upon him."

The Supreme Court of Texas held that the Court of Civil Appeals had incorrectly placed the burden of proof upon Sears. The case was remanded to that court to correct the error.

There is an analogy between misuse of credit cards and misuse of savings passbooks. In *R. Polonsky* v. *Union Federal Savings and Loan Association*, 334 Mass. 697 plaintiffs, husband and wife, received from defendant a passbook, on the inside cover of which was printed the following: "This association shall not be held responsible for money paid out to any person unlawfully presenting this book." There was evidence that the above did not come at any time to the attention of the plaintiff or her husband. There was nothing on the signature card which dealt with the effect of payment by

the defendant to one improperly presenting the book. Payment was made to an imposter who presented the book, together with withdrawal slip on which the name of the plaintiff had been forged. Plaintiff brought the action in contract or tort to recover the sum erroneously paid. The trial judge in the District Court ruled that the rights of the parties were governed by the terms of the contract when the account was opened; that the language on the inside cover of the bankbook above quoted was not part of the contract; and that since this language never came to the attention of the plaintiff, she was not bound by it.

The case was reported to the Appellate Division which reversed the court's action and ordered judgment for defendant. 11 Mass. App. Dec. 112. On appeal to the Supreme Judicial Court the judgment was upheld:

In its opinion the court said at p. 700:

"The case at bar, therefore, presents the question whether a depositor who does not expressly assent to an exculpatory provision contained in a bank book and not brought to his attention is, nevertheless, bound by it in accepting and retaining the book. . . .

"But according to the weight of authority a depositor by accepting and retaining a pass book wherein such a provision is printed is deemed to have assented to it, and the provision becomes a part of the

contract between the bank and the depositor." (cases cited)

The Court also further said at p. 701:

"... Where what is given to a person purports on its facts to set forth the terms of a contract, the person, whether he reads it or not, by accepting it assents to its terms, and is bound by any limitation of liability therein contained, in the absence of fraud. *Kergald* v. *Armstrong Transfer Express Co.*, 330 Mass. 254, 255 and cases collected. On the other hand, where what is received does not purport to be a contract, such as, for example, a baggage check, a check issued at parking lot, or a ticket to an amusement device, it has been held that the person receiving it is not bound by a limitation of liability unless it is actually known to the recipient. *Kergald* v. *Armstrong Transfer Express Co.*, supra, 330 Mass. at pages 255-256, 113 NE 2d at page 54. While it is arguable that a bank book bears considerable resemblance to this type of document, we are of opinion, in accordance with the prevailing view, that it constitutes part of the contract entered into between the depositor and the bank and that the depositor is bound by lawful provisions therein contained whether or not he reads them and whether or not they are brought to his attention."

It was not seriously argued by defendant

that G.L. c. 255 as amended by St. 1968, c. 394 limiting the amount recoverable from the holder of a credit card to $100 applies to the case at bar. In any event we do not consider it applicable here. On the other hand it can be argued on behalf of plaintiff that the 1968 Legislature limited the amount recoverable to $100 because it recognized the serious predicament in which a cardholder could find himself under the law as it existed at the time the cause of action in the present case arose. Incidentally, it may be noted that the recent amendment also requires identification on the credit card by photograph or signature.

With respect to the requests for rulings there was no error in the denial of request #1. We have already noted that there was no legal duty on the seller to verify the identification of the one presenting the credit card.

Requests ##6 and 7 were correctly denied. The law of contracts, not torts, governs this type of case. Due care indirectly is a factor but in the sense that the parties implicitly agree to avoid carelessness in the issuance and the possession of the credit card.

The Court properly allowed request #8 with the notation that the credit card satisfied the Statute of Frauds.

Request #10 raises a similar issue as in ##6 and 7 and was properly denied. Request #11 was properly denied. We do not agree with defendant's argument that there was no "purchase" by the wrongdoer.

We do not find that the trial court's qualifying remarks with respect to granted requests involve prejudicial error.

*The report is to be dismissed.*

IRA NAGEL
  for the plaintiff.
HAROLD H. WEISMAN
  for the defendant.