PROVIDENT FIRE INSURANCE COMPANY v. J. W. ASHY,
BY NEXT FRIEND.

No. 7873. Decided May 13, 1942.
Rehearing overruled June 24, 1942.
(162 S. W., 2d Series, 684.)

*Bryan & Bryan,* of Houston, for plaintiff in error.

The record warranty clause in a policy of fire insurance, which requires the insured to keep and preserve a set of books

containing a complete record of the business transacted in an iron safe during the hours at night that the store is closed, has not been complied with when said books are left outside the safe and are destroyed by fire. Merchants & Manufacturers Lloyds v. Southern Trading Company, 229 S. W. 200; American Ins. Co. v. Davis, 77 S. W. (2d) 278; Hartford Fire Ins. Co. v. Adams, 158 S. W. 231.

*Manry & Cochran,* of Livingston, for defendants in error.

The plaintiff having made, kept and presented to the insurance company a complete set of books pertaining to the transactions of business for the calendar year immediately preceding and the calendar year up to the time of the fire, and the jury having found that said books and records were delivered to said company, the court did not err in refusing to instruct a verdict in favor of defendant or in refusing to grant a new trial. Westchester Fire Ins. Co. v. Brantley, 73 S. W. (2d) 961; Chicago Fire & Marine Ins. Co. v. Herring, 54 S. W. (2d) 236; Federal Surety Co. v. Smith, 41 S. W. (2d) 210.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit by J. W. Ashy, a minor, through his father, W. J. Ashy, as next friend, on a fire insurance policy. Upon a jury verdict the trial court rendered judgment for Ashy. The Court of Civil Appeals, at Beaumont, affirmed the judgment. 149 S. W. (2d) 1049.

The appeal here presents two main questions, namely, (1) whether Ashy complied with policy provisions with respect to proof of loss and (2) whether he satisfied the "iron safe" clause thereof. According to our view, decision of the first question determines the appeal.

The policy in controversy was a Texas Standard Form. It provided that in the event of a fire, Ashy "within ninety-one days after the fire, unless such time is extended in writing by this company, shall render a statement to this company signed and sworn to by said insured stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and all others in the property; the cash value of each item thereof and the amount of loss thereon; * * *."

The jury found both (1) that within ninety-one days after the date of the fire Ashy filed with the insurance company a sworn proof of loss in substantially the form required by the express terms of the policy and (2) that the insurance company, "by the act of its agents, servants, and employees led Ashy to believe that he had done all that was necessary to be done in order to comply with the insurance company's requirement for filing proof of loss.

We do not believe that the evidence supports either finding. If it does, the same must be found either in an interview between respondent's father and petitioner's adjuster, R. E. Fones, had on February 17, 1940, two days after the fire and an affidavit made by Ashy in connection therewith, or in a sworn examination made of the father by petitioner's attorney on March 26, 1940, since respondent does not contend that any proof of loss was furnished otherwise or that any agent of petitioner's at any other time or in any other connection led him to believe that he had done all that was necessary with reference to proof of his loss.

■ The affidavit made by Ashy to Fones related exclusively to the books kept by Ashy in operating the store. In it he said that when the fire occurred, the safe "contained the inventory of stock on hand as of January 1, 1940, and the book showing the daily sales from September 1, 1938, to the date of the fire; however, *the book containing the record of purchases was not in the iron safe the night of the fire and it was destroyed in the fire. I have no record of the complete purchases of my store up to the date of the fire,* but I could secure copies of invoices of *most* of the purchases made." (Italics ours.) Ashy said he gave Fones copies of the inventory and other things he had. However, waiving all other considerations, this cannot be considered as any proof of loss because it clearly did not give petitioner any information as to purchases, that is, items added to the stock, since January 1, 1940, and afforded, therefore, no basis from which it could ascertain the different articles which went to make up the stock and thereby test the correctness of Ashy's claim. With it alone the petitioner certainly could not determine whether the valuations attached to the different items which Ashy claimed he lost in the fire were reasonable. Commercial Union Assur. Co. v. Preston, 115 Texas, 351, 282 S. W. 563; Home Ins. Co. v. Puckett (Com. App.), 27 S. W. (2d) 111; Providence Washington Ins. Co. v. Whit-

ley (Civ. App.), 71 S. W. (2d) 359 (er. dism.) ; Fed. Union Ins. Co. v. Hardin et al (Civ. App.), 115 S. W. (2d) 1144.

After testifying that he on this occasion gave Fones copies of the inventory and "things" he had, Ashy described the interview as follows:

"Q. After you talked with Mr. Fones was there anything said by Mr. Fones in regard to what else would be required of your son in regard to making any further proof of loss?

"A. No, sir."

\*     \*     \*     \*     \*

"Q. Did he tell you you would have to file any other papers in order to collect your insurance?"

"A. No, sir, never said anything about it."

·There is certainly no testimony of probative force that Fones on this occasion led Ashy to believe that he had done all that was necessary to do to comply with the requirements of his policy respecting proof of loss. It was not Fones' obligation to tell him what to do.

The record shows that in the examination of Ashy under oath by petitioner's attorney on March 26, 1940, the inquiries related principally to whether Ashy or his son really owned the business and as to the intake and outgo from the time of its purchase until the fire. Assuming (but not deciding) that the inventory taken by him on January 1, 1940, was sufficient, the testimony elicited from Ashy during this examination did not amount to a proof of loss because (1). the items sold therefrom after January 1 to the date of the fire are not sufficiently shown in that only the total sales for each day are set out without any attempt whatever at itemization, and (2) goods added by purchase were not shown, Ashy testifying that he would get copies of the invoices from the wholesale houses if necessary. Scottish Union & Natl. Ins. Co. v. Clancey, 83 Texas 113, 18 S. W., 439, and authorities cited above. See Dorroh-Kelly Mercantile Co. v. Orient Ins. Co., 104 Texas, 199, 135 S. W., 1165; Security Nat. Fire Ins. Co. v. Schott Drug Co., 133 Texas 559, 129 S. W. (2d) 632, 125 A. L. R. 342; Merchants & Mfg. Lloyds Ins. Exch. v. So. Trading Co. (Com. App.), 229 S. W., 312.

■ It is significant that in the paragraph of the policy in suit next succeeding that relating to proof of loss, the insured bound himself to "submit to examination under oath by any person named by this company, and subscribe the same." So, in the absence of special circumstances, if the examination referred to was intended to take the place of proof of loss, one or the other of the paragraphs would be a meaningless repetition of words. In fact, it has been said that one does not take the place of the other. 24 Tex. Jur., p. 1107. We hold, therefore, that nothing in the examination of Ashy's father was evidence in support of the jury's finding that a proof of loss was seasonably filed by respondent.

We find nothing in the facts or circumstances attending this examination to support the jury's finding that petitioner's representatives led Ashy to believe that he had done all the insurance company required him to do respecting proof of loss. We fail to find any such support in the excerpt from the testimony of Gordon Reily, who acted as Ashy's adviser in the examination, as quoted in the opinion of the Court of Civil Appeals. For example, when asked whether he or Fones told Ashy it would not be necessary for him to do anything else *until he was notified further,* Reily answered, "Well, he told me, talking to us together, he said *that was all that could be done at the present time. I* asked him *if there was anything we could do to expedite the payment of this thing and he said we had done all we could do. He said I will just have to make my report to the Company."* Then when asked why he did not have Ashy file a proof of loss Reily said, "If you will refer to one of my letters you will see where I stated *that I thought he had. Mr. Fones left the impression with me that everything had been done that need to be done."* In response to a question as to whether Fones stated that it would be necessary for Ashy to do anything in addition to what had been done in order to collect on the policy, Reily replied, *"I assumed he assured me everything was done that could be done."* (Italics ours.) So, under his own statement, Reily's testimony was not unequivocal but was based on an assumption. Furthermore, Reily, who sold and delivered the policy in suit and who had been in business as a local insurance agent for four or five years, testified that he hed never read a Texas Standard Form policy in his life and did not know what was in such a policy. He said, "I knew the general terms, but I never did get down in that fine reading." In view of such facts, we do not believe his testimony quoted

above has any probative force on the issue as to whether Ashy was led by Fones or others to believe that he had done all the insurance company required of him with respect to proof of loss.

Ashy's policy provided that the insurance company could not be held to have waived any provision or condition thereof by any requirement, act or proceeding on its part relating to any examination therein provided for. Moreover, in conjunction with both the affidavit made to Fones and the subsequent examination of Ashy under oath, he and the insurance company signed what is designated as a "non-waiver agreement." That executed on February 17, 1940, along with the affidavit, stated, among other things, "The intent and purpose of this agreement is to save and preserve all the rights, requirements, or defenses of the parties hereto respectively, and to permit without prejudice a full investigation of the claim, and the determination of the amount of the loss and damage to the property, in order that the party of the first part (Ashy) may not be unnecessarily delayed in business, and that the amount of loss and damage may be ascertained and determined without regard to any question of liability of the party or parties of the second part (petitioner), and without prejudice to any rights * * * which said party * * of the second part may have under and by virtue of the terms, conditions and stipulations contained in said policy." Under the facts of this case, such agreements must be given effect because "our courts have uniformly held that non-waiver agreements executed by the insured and the insurer, previous to an examination to be made, by which the parties may proceed without waiving their rights, are binding on the parties." City of Wichita Falls v. Trav. Ins. Co. (Civ. App.), 137 S. W. (2d) 170 (er. dism.), expressly approved in Utilities Ins. Co. v. Montgomery, 134 Texas 640, 138 S. W. (2d) 1062.

■ We realize the fact that respondent's father, who managed the burned store and acted for him in this matter, was an uneducated man of foreign birth and that he may not have fully understood all that happened or the full significance of what he did or failed to do, and it may be that anything else would have been of no real value or help to the insurance company; yet we cannot relieve him from the consequences of his failure under the record before us. As Chief Justice Brown said in Dorroh-Kelly Co. v. Orient Ins. Co., supra, "Parties

make their own contracts and it is not within the province of this court to vary their terms in order to protect them from the consequences of their own oversights and failures in non-observance of obligations assumed."

Since respondent failed to furnish a proof of loss as and within the time required by his policy, the trial court erred in not instructing a verdict for petitioner.

The judgments of the courts below are reversed and judgment is here rendered for petitioner.

Opinion adopted by the Supreme Court May 13, 1942.

Rehearing overruled June 24, 1942.