**Waldo DUKE, Appellant,**

v.

**SEARS, ROEBUCK AND CO., Appellee.**

No. 354.

Court of Civil Appeals of Texas.

Tyler.

Oct. 17, 1968.

Rehearings Denied Nov. 14, 1968.

920 ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Evans, Pharr, Trout & Jones, John A. Flygare and Carlton B. Dodson, Lubbock, for appellant.

Key, Carr, Carr & Clark, Donald M. Hunt, Lubbock, for appellee.

DUNAGAN, Chief Justice.

The appellant, Waldo Duke, has appealed from an adverse judgment against him in a suit brought by appellee, Sears, Roebuck and Co., to recover the purchase price of numerous items of merchandise obtained at various Sears stores through the unauthorized use by some unknown person of a Sears Charge Account identification card issued to and accepted by appellant.

The facts giving rise to the cause of action are relatively uncomplicated. It is not disputed that in April of 1960, Waldo Duke applied for a charge account with appellee by signing and agreeing to a "Sears Revolving Charge Account Agreement," which in pertinent part provided:

"In consideration of your selling merchandise to me on Sears revolving CHARGE ACCOUNT, I agree to the following regarding all purchases made by me or on my Sears revolving CHARGE ACCOUNT identification:"

(Hereafter followed certain terms and conditions regarding payment for the aforementioned purchases.)

Appellant's application was accepted, and Sears issued to him two copies of Sears Credit Card No. 0–80253–69069–9. On the front of these identical plastic cards in raised plastic letters was appellant's name, his account number and a code number assigned to the issuing store in Lubbock, Texas. On the back of each card was a space for the issuee's signature under which it was stated: "Valid When Signed By Authorized Purchaser." Also, at various places on the back of the cards were the statements: "Property Of Sears, Roebuck And Co."; "Returnable Upon Request"; and "Report Loss Or Theft Of Card To Credit Office."

Appellant accepted and retained these credit cards when sent to him. While he was unable to recall whether he signed his card in the blank space provided or whether he ever used it to make charge purchases, he did testify that his wife signed the card which he gave to her and that she used it periodically to charge purchases at Sears stores.

Circumstantially at least, it appears that appellant's card was unknowingly misappropriated from him on December 13, 1965, while he was attending his employer's sales convention in New York City.

The unauthorized purchase of merchandise through use of appellant's credit card occurred in six Sears stores in various cities in New York and New Jersey beginning December 13, 1965, and ending December 27, 1965. The sales were evidenced by sixty-four copies of sales tickets, all but three of which [1] bore the raised letter imprint of appellant's credit card. There

---

1. On three tickets the credit card number and appellant's name and address in Lubbock were entered by hand.

was no indication on any of the sales tickets that any of the merchandise involved had been, or still was, retained by the selling store.

Appellant did not discover that his credit card was missing until January 12, 1966, when he received a telephone call from a Mr. Bailey, an employee in the credit department of Sears' Lubbock store, who called as a result of suspicions aroused by the excess activity in appellant's account. As a result of this conversation, appellant discovered that his Sears credit card and a Sinclair credit card were missing. Mr. Bailey was informed of this as well as the fact that appellant had not made the purchases in question and had not authorized the use of his card. The next day, appellant, through his attorney, wrote a letter to the credit department at the Lubbock store, informing it of the same information and demanding that Sears "* * * immediately discontinue any charges made on this credit card, cancel the same, and take whatever procedures you may have to avoid additional charges on the account."

On the basis of these facts, the case was submitted to a jury which found: (1) that all the charges in question were made on appellant's credit card, but not by him personally and not upon his authorization; (2) that appellant's credit card was either lost or stolen; (3) that he had failed to sign it, but such was not negligence; (4) that appellant did not fail to use ordinary care to prevent the loss or theft of his card; (5) that he did not fail to discover and report loss or theft of the card within a reasonable time; (6) that Sears did not fail to use ordinary care in ascertaining the identity and authority of the persons using appellant's credit card; and (7) that the reasonable and customary charge for the merchandise in question was $1,335.77. The jury failed to answer two issues which inquired if Sears "did not fail" to become

aware of the charges to appellant's account within the time an ordinarily prudent person would have done so and, if they did so fail, if such failure was "* * * a proximate cause of the charges being made to Waldo Duke's account." Nevertheless, the trial court accepted the verdict and, after overruling appellant's various alternative motions for judgment or mistrial, the court entered judgment for appellee in the amount of $1,254.86, plus interest.[2]

Appellant's appeal is predicated upon seven points of error in which it is contended: (1) that the trial court erred in failing to grant appellant's motion for judgment on the verdict because the jury failed to find appellant at "fault" in any particular regarding the loss of his card and its subsequent misuse; (2) that there is no evidence, or, alternatively, insufficient evidence to support the jury's finding that Sears "did not fail" to use ordinary care in ascertaining the identity or authority of the card user; (3) that a mistrial should have been granted because of the jury's failure to answer Special Issues Nos. 14 and 15; (4) and, finally, that judgment should have been rendered for appellant because of the finding that he did not sign his card in the space provided thereon.

## A. The Significance of Appellant's Lack of Fault.

■ Appellant does not contend that the revolving sales charge "agreement" executed by him is invalid or that it is not a binding contract. Since it is that "agreement" which prompted the issuance of the credit cards in question and governed their use, we hold that the rights and duties between the parties in this matter are controlled by that "agreement" and that the determination of the legal issues here involved must rest in the law of contracts unfettered by the tort concept of "fault." See Union Oil Company of California v. Lull, 220 Or.

2. The discrepancy between the amount found by the jury and the amount of the judgment, as explained in appellee's brief, is the result of the trial court's holding inadmissible certain of the sales tickets representing the sales price of the merchandise appropriated.

412, 349 P.2d 243 (1960); Texaco, Inc. v. Goldstein, 34 Misc.2d 751, 229 N.Y.S.2d 51 (Mun.Ct. of N.Y. City, 1962), aff'd. Sup., 241 N.Y.S.2d 495.

■ While the provisions of the underlying "agreement" and the statements on the card itself do not as specifically delimit the rights and duties of the respective parties as is often found in such credit card arrangements,[3] we nevertheless believe that, fairly construed, the "agreement" imposes upon appellant the liability for "all purchases" made through the use of his card whether authorized or not wherein it provides: "* * * I agree to the following regarding *all purchases* made * * * *on my Sears revolving CHARGE ACCOUNT identification:*" (Emphasis added).

Parenthetically, it should be noted that appellant has never contended in this court or in the trial court that the term "identification" in the above quoted clause referred to anything other than the credit card or "identification" card which he subsequently received and used to make purchases from Sears stores. As a matter of fact, throughout the record, appellant's lost or stolen card is referred to as his Sears "identification card" and that phrase was also used in referring to said card in several of the Special Issues submitted.

■ Furthermore, while we think the phrase "identification" clearly referred to the card in question, even if it did not, the question would appear to be moot in view of the undisputed fact that not only did appellant without objection receive the card in question as a means to use his account, he also *actually* used the card to charge purchases to his account. Thus, if the contract did not contemplate issuance and use of a

"card," the subsequent action of appellant in receiving and using such card was an acceptance of the same as an integral part of the contractual agreement. Magnolia Petroleum Co. v. McMillan, 168 S.W.2d 881 (Tex.Civ.App., Austin, 1943, n. w. h.). No issue was raised in the trial court as to whether appellant requested the card and there is no testimony as to whether he did or did not.

■ Anticipating this holding, appellant contends that the above quoted phrase must be read with the proviso "with my authority" included after the word "identification." We believe such a holding would be an unauthorized variance or reformation of the terms of a written contract. Appellate courts, as well as trial courts, are simply not at liberty to create a new contract between parties under the guise of "construction." General American Indemnity Company v. Pepper, 161 Tex. 263, 339 S.W.2d 660, 661 (1960); Provident Fire Ins. Co. v. Ashy, 139 Tex. 334, 162 S.W.2d 684, 686–687 (1942); Dorroh-Kelly Mercantile Co. v. Orient Ins. Co., 104 Tex. 199, 135 S.W. 1165, 1167 (1911). A similar contention to so construe the conditions attached to a credit card was rejected in Union Oil Company of California v. Lull, 220 Or. 412, 349 P.2d 243 (1960), where the court held:

"* * * Defendant would have us recast the terms of the contract by limiting the cardholder's liability to cases in which he had authorized the use of the card or where, through his fault, the card was used by one not authorized to do so. There is nothing in the transaction between the plaintiff and defendant which would justify this modification of the conditions clearly expressed on the card." (349 P.2d 247.)

3. See Magnolia Petroleum Co. v. McMillan, 168 S.W.2d 881 (Tex.Civ.App., 1943, no writ); Union Oil Company of California v. Lull, 220 Or. 412, 349 P.2d 243 (1960); Socony Mobil Oil Co. v. Greif, 10 A.D.2d 119, 197 N.Y.S.2d 522 (N.Y.Sup., App. Div., 1960); Texaco, Inc. v. Goldstein, 34 Misc.2d 751, 229 N.Y.S.2d 51 (Mun. Ct. of N.Y.City, 1962), aff'd. Sup., 241 N.Y.S.2d 495; and Read v. Gulf Oil Corp., 114 Ga.App. 21, 150 S.E.2d 319 (1966).

**924**

Accordingly, appellant's numbers 1 and 2 are overruled.

### B. The Care Exercised by Sears in Identifying the Party Using the Card.

Special Issue No. 12 asked:

"Do you find from a preponderance of the evidence that Sears, Roebuck and Company did not fail to use ordinary care, as that term is herein defined, to ascertain the identity and authority of the person or persons presenting Waldo Duke's identification card in making the purchases in question?"

The jury answered this issue:

"It did not fail."

Appellant's point of error No. 3 and point of error No. 4 complaining that said answer is not supported by any evidence or, alternatively, that it is not supported by factually sufficient evidence presents a more serious question.

Insofar as this record is concerned, appellee did not object to the submission of Special Issue No. 12, and there is no contention in appellee's brief that the inquiry in that issue does not constitute a valid defense to the cause of action alleged.[4]

Consequently, we will treat this case as if Sears was, and is, under a duty to use ordinary care to " * * * ascertain the identity and authority * * *" of persons who make charge purchases by use of Sears identification cards. We will also assume that failure to exercise such care would constitute a valid defense at least to those charges where the duty of care was not exercised. There is certainly authority for the imposition of such a duty. In Union Oil Company of California v. Lull, 220 Or. 412, 349 P.2d 243, (1960), the court held:

"We think that the indemnity agreement in the instant case must be interpreted as subjecting defendant to liability for sales made through the unauthorized use of its credit cards only if due care is exercised by plaintiff, its agents, and privies, to ascertain the authority of the customer who presents the card. * * *

* * * * * *

"The burden of proving that reasonable inquiry was made is upon the plaintiff. * * *" (349 P.2d 252, 254.)

It is noteworthy apparently in reliance upon the latter part of the above quotation, that the burden of proof in Special Issue No. 12 was placed upon appellee. There is no complaint by Sears that that burden of proof was improperly placed. Therefore, we will decide if Sears sustained the burden it assumed in that issue by introducing "some evidence" and/or factually sufficient evidence to support the jury's finding that it did not fail to exercise the requisite duty of care. We do not believe appellee sustained its burden.

There is no testimony from any of the sales people who made the sales in question. There were interrogatories propounded to the credit managers of the various Sears stores where the merchandise was purchased; for the most part, they all stated that in each instance the Sears Revolving Charge Card was requested to identify the purchaser, but they either did not, or were unable to state whether any other type of identification was requested. In short, except as indicated in the following paragraphs, there is nothing in the record to indicate the circumstances surrounding the purchases in question and nothing to indicate what care, if any, was exercised by the various sales personnel " * * * to ascertain the identity and authority of the person or persons presenting Waldo Duke's identification card * * *."

It is appellee's contention that the requisite evidence of care exists (1) in the fact that one of the charge slips was additionally

---

4. As a matter of fact, appellee concedes in its brief that " * * * there is implied * * * a duty to use due care as to the attending circumstances in honoring * * *" charge identification cards.

imprinted with appellant's Sinclair credit card, which was presumably taken along with his Sears card, and (2) in the fact that three of the charge slips, instead of being imprinted with appellant's Sears card, were filled in by hand with appellant's name, account number and address, which address was not shown on either the Sears card or the Sinclair card. From these facts, appellee reasons that the jury could have concluded that, in each instance, Sears sales personnel requested additional identification and were presented either the Sinclair credit card or other unknown items which could have been obtained from appellant's billfold at the time the other two cards were taken.

However, the fact that one of the sales tickets was imprinted with appellant's Sinclair card does not tend to prove that such card was requested and exhibited when *each* of the numerous other purchases were made. Nor does the fact that three of the sales tickets contained the correct address of appellant in Lubbock, Texas probatively establish that the defrauding imposter either possessed other identification taken from appellant's billfold or that he exhibited such *each time* he made a purchase from a Sears store.

■ Appellee alternatively contends that, absent any "suspicious" circumstances, presentation of the Sears credit card alone was sufficient identification of the purchaser and his authority to use the card. We think this contention is somewhat of a non sequitur. The mere presentation of a credit card, standing alone, proves nothing except possession; unconnected with anything else, it is neither probative of the identity or the authority of its user. To hold that requiring presentation of a card alone is a sufficient exercise of care would virtually eliminate that duty in the very situations where it is most demanded, i. e. when the card is used by an imposter, thief or one without any indicia of ownership or authority.

■ If, as appellee contends, there must be "suspicious" circumstances in connection with a purchase before the duty arises (a question which we need not decide), it is sufficient to note, as before, that appellee did not offer any proof of the circumstances surrounding the purchases in question, much less proof that the appearance and demeanor of the unauthorized purchaser were not "suspicious." On the other hand, the record does reveal that, although a number of the purchases were of minor items, a number of them consisted of very expensive items, including a portable T.V., two radios, a phonograph, an electric broom, an electric knife, luggage, jewelry, and various items of clothing. As many as ten separate charge tickets, covering 32 separate items of merchandise, were made in a single store on one particular day. Additionally, the credit card presented to charge these items in the New York and New Jersey stores bore an imprint number indicating that the store issuing the card was in Lubbock, Texas. All of this, we think, is evidence sufficient to put a reasonable person on inquiry.

■ We realize that, because the charges in question were made in stores quite distant from Texas, appellee's burden of proving its exercise of care is an onerous one. Nevertheless, the fact remains that Special Issue No. 12 casts that burden upon appellee and appellee has conceded that duty and assumed the burden without complaint. In view of the fact that there is at least some circumstantial evidence indicating that identification was requested when *some* of the purchases in question were made, we cannot hold that there is no evidence to support Special Issue No. 12. We do not believe, however, that there is evidence that appellee discharged its duty of care in regard to *all* of said purchases as Special Issue No. 12 inquired. Accordingly, we hold that the jury's answer to that issue is not supported by factually sufficient evidence.

In view of a remand of this case necessitated by our holding, we will discuss brief-

ly the other points raised by appellant in order that they might not occur again on a new trial.

■■■ We do not believe that appellant's failure to sign his credit card is available to him as a defense to appellee's entire cause of action. We believe that the proviso on the card "Valid When Signed By Authorized Purchaser" is intended to protect both the issuer and the issuee against misuse of the card and is not a condition precedent to a valid contractual relationship between the parties. Appellant's undisputed use of one of the cards sent to him through the agency of his wife constituted an acceptance of the cards and an assent to the agreement underlying their issuance. Magnolia Petroleum Co. v. McMillan, supra; see also Read v. Gulf Oil Corp., 114 Ga. App. 21, 150 S.E.2d 319, (1966).

■■■ Neither do we believe that the inquiry submitted in Special Issues Nos. 14 and 15 constituted a defense to appellee's entire cause of action. We agree with the court in Allied Stores of New York, Inc. v. Funderburke, 52 Misc.2d 872, 277 N.Y.S. 2d 8, 13–15 (Civ.Ct. of N.Y. City 1967) that, particularly in a bipartite arrangement like the one here involved, [5] a mercantile store issuing a credit card is under a duty to prevent misuse of the card by reporting suspicious or excessive activity in the account to its customer. However, since there must be some charges to an account before any suspicious or excessive activity could be detected, breach of that duty can have legal significance only in regard to purchases made after the duty arises, but not to those valid charges which give rise to and occur before the duty arises. We view such duty to be more like a contracting party's general duty to minimize damages that may accrue by reason of the breach of a contract. 17 Tex.Jur.2d 115, "Damages," Sec. 38 (1960). We believe that such inquiry is more appropriately submitted as special

instruction with the damage issue or by special issue, or issues, which determine the amount of charges incurred after breach of the duty to discover and notify.

The judgment of the trial court and this cause is reversed and remanded for a new trial.

MOORE, Justice.

I respectfully dissent from the majority opinion. The only instrument signed by the appellant was a simple application for credit. The application simply stated that:

"In consideration of your selling merchandise to me on Sears revolving CHARGE ACCOUNT, I agree to the following regarding all purchases made by me or on my Sears revolving CHARGE ACCOUNT identification:"

(The application then sets forth certain terms and conditions with respect to the amount of monthly payments, together with a schedule of any interest charges thereon.)

I agree to the statement in the majority opinion wherein it is stated that the legal issues involved here must rest in the law of contracts. But I do not agree that appellant entered into a contract with appellee to pay for all purchases made by the use of a credit card, whether the purchases were made by him or not.

The determination of whether or not a contract existed will depend solely upon the interpretation to be accorded the language used in (1) the credit application; (2) the so-called credit card; or (3) both instruments when construed together.

The majority seeks to predicate appellant's liability upon the language used in the above quoted provisions of the credit application. They say that when "fairly construed, the 'agreement' (referring to the credit application) imposes upon appellant the liability for 'all purchases' made

5. A credit arrangement which does not require the intervention of a third party independent retailer such as is customary in a normal gasoline credit card arrangement.

through the use of *his card."* (Emphasis supplied.) Thus, the majority says that appellant agreed to become liable for all purchases made on "his credit card," despite the fact that the credit application (agreement) fails to mention anything about a credit card, much less anything with respect to any liability thereon. Just how they could have arrived at the conclusion that appellant automatically became liable upon a credit card when the term "credit card" is not even mentioned in the subject matter of the agreement is beyond my comprehension. It occurs to me that even a cursory reading of the credit application will reveal that the parties did not contract with regard to any purchases made by the use of a credit card. As I see it, the majority, by a "boot strap" method of construction, has erroneously imposed contractual liability where none in fact exists.

We will now direct our attention to whether or not appellant may be held liable under the terms and conditions printed on the card itself, irrespective of the credit application. In this connection, it is without dispute that appellant did not request the card. It was sent to him through the mail several days after he signed the application for credit. The card is fully described in the majority opinion and I will not undertake to again describe it here, except to say that the card had the words "Credit Card" stamped on the face thereof. It will be noted that the card contains no statement whatever advising appellant that he would be liable for purchases made by use of the card, whether made by him or not. It merely advises him to "Report Loss Or Theft Of Card To Credit Office." Therefore, I take the position that by merely accepting and retaining the card, appellant cannot be held to have contracted to pay for all merchandise purchased by the use of the card whether purchased by him or not. There is nothing on the card indicating that a contract was contemplated and therefore, it appears to me that by accepting the card appellant agreed to nothing.

Nor do I believe that the card, when considered together with the credit application, is sufficient to form the basis of a contract to pay for purchases made by the use of the card. As I view the evidence, the two instruments cannot be construed together because neither makes any reference to the other. The majority frankly admits that neither the credit application nor the statements on the card itself delineates the rights and duties of the respective parties as is usually found in credit card arrangements.

There is absolutely no evidence showing that appellant, at the time he signed the credit application, either knew or by the use of reasonable diligence should have known, that the company would issue a credit card which, when used by another, might subject him to liability for unauthorized purchases. Certainly it cannot be said that appellant was charged with such knowledge by reason of the language in the credit application or by the wording on the card, because neither instrument contained any contractual language with respect to the use of the card.

Even though the majority recognizes the fact that there is nothing in the credit application or on the card itself which delineates the rights and duties of the parties with respect to liability upon a credit card, they apparently concluded that a contract could be inferred. I do not agree. How can it be inferred that the credit application or the card, or both, amounted to a contract of guaranty or indemnity when neither of the instruments reflect such an agreement or make any reference to the other? I can find no basis for an inference that appellant agreed to pay for merchandise not purchased by him or his wife, because I have been unable to find any agreement to that effect in either the card or the credit application. To bind him to such agreement, he must have so contracted and he did not. Lit Bros. v. Haines, 98 N.J.Law 658, 121 A. 131, (S.Ct.

N.J.). It appears to me that the majority, through the guise of construction, has simply written a new contract for the parties.

Furthermore, even though it be assumed that the credit application could be construed as an agreement by the appellant to accept and use a charge plate for himself and his wife, it by no means follows that he bound himself to pay for unauthorized purchases made by anyone else. Whatever contract which may have resulted from the credit application was completely devoid of any reference to that contingency. The card itself was, likewise, devoid of any agreement with respect to such contingency. Appellant not having thus bound himself by direct agreement, it follows that he would not be responsible for unauthorized purchases made by a stranger. Thomas v. Central Charge Service, Inc. (D.C.App.), 212 A.2d 533, 15 A.L.R.3d 1083.

It is frequently stated that in the interpretation of contracts of surety, guaranty and indemnity, the promises of the uncompensated surety, guarantor or indemnitor are to be strictly construed. Union Oil Company of California v. Lull, supra.

It seems to me that the majority has completely ignored the foregoing principles of law and has rendered a far-reaching decision holding that a person may be subjected to liability upon a card issued by a merchant containing only his name, account number, and the words "credit card" regardless of whether or not he contracted with the merchant with respect to the unauthorized use of the card or not. This is not the law in other jurisdictions. 15 A.L.R.3d 1083. And, it should not be the law in Texas.

I am firmly convinced that no contractual liability is established by the evidence and that the card amounts to nothing more than a simple identification card.

I would therefore reverse the cause and render judgment in favor of the appellant.