Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed and Memorandum Opinion filed March 31, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00656-CV

____________

 

CAMERON INTERNATIONAL CORPORATION
F/K/A COOPER CAMERON CORPORATION, Appellant

 

V.

 

VETCO GRAY INC., Appellee

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 2003-61873

 



 

M E M O R A N D U M   O P I N I O N

This is a contract interpretation case.  Appellant, Cameron
International Corporation f/k/a Cooper Cameron Corporation, appeals the trial
court=s confirmation of
an arbitrator=s award and the granting of summary judgments
construing the language of an unambiguous contract.  Finding no error, we
affirm.

Factual and Procedural Background

A Christmas tree is a device, made up of a series of valves
and pipes, which regulates the flow of oil and gas produced by subsea wells. 
There are four primary manufacturers of subsea Christmas trees worldwide:
appellant, appellee, Vetco Gray Inc.,  Kvaerner Oilfield Products, Inc. (AKvaerner@), and FMC
Technologies, Inc. (AFMC@).  Originally,
Christmas trees were vertical.  Maintenance on subsea wells was an expensive
and time-consuming process because the entire vertical Christmas tree had to be
removed first.  In 1996, appellant patented a new design of Christmas tree, a
horizontal tree, which appellant called the SpoolTree.  The SpoolTree design
was superior to the old vertical tree design because it allowed maintenance to
be performed while the tree remained in place and provided better protection
against leakage that could endanger workers and harm the environment.

After it patented the SpoolTree, appellant sent notice of
its patent to its three competitors: appellee, Kvaerner, and FMC.  In addition,
appellant invited each of the three competitors to negotiate a license to use
the SpoolTree design.  Of the three competitors, only appellee entered into
negotiations with appellant for a license.  Kvaerner and FMC entered into
litigation with appellant over the design.  In 1997 appellee=s negotiations
with appellant were successful and they entered into a contract, the
Cross-License Agreement.  Pursuant to the Cross-License Agreement, appellee
agreed to pay appellant a royalty rate of 6.5 percent of all revenue obtained
from selling products covered by appellant=s patents
retroactive to August 1996.  In addition, appellee gave appellant a
cross-license for several of appellee=s products and
received a $3 million credit to be applied to its royalty payments to
appellant.  In addition, to protect appellee=s status as the
first to obtain a SpoolTree license, the Cross-License Agreement includes a Amost-favored
licensee@ clause that
requires appellant to promptly notify appellee of any SpoolTree licenses
appellant might grant to a third party.  In addition, paragraph 5.2 of the
Cross-License Agreement provides:








In the
event the ROYALTY TERMS of such third-party license are, as a whole, more
favorable to the other PARTY than are provided in this CROSS LICENSE AGREEMENT,
then for so long as the third-party license is in effect, the other PARTY shall
be entitled to elect the more favorable ROYALTY TERMS from the date of notice
to the third party or the date of marking, whichever is earlier.

To
address the possibility that future SpoolTree licenses might not have an
explicit royalty percentage such as appellee=s 6.5 percent, the parties included
paragraph 5.6 in the Cross-License Agreement, which provides:

In the
event the PARTIES cannot agree on the ROYALTY TERMS of a third party license,
the PARTIES shall select within fifteen (15) days after written request by a
PARTY one economic evaluator by mutual agreement, which agreement shall not be
unreasonably withheld.  The PARTIES shall submit in writing to the economic
evaluator the issue of the ROYALTY TERMS for the third party license.  Each
PARTY shall be allowed one written submission and neither party shall be
allowed a responsive or other written submission unless specifically requested
in writing by the economic evaluator.  There shall be no ex parte contact with
the economic evaluator concerning the subject matter.  The economic evaluator=s decision, which must be made within one month of the
final submission, shall be binding upon the PARTIES.  The PARTIES shall share
the cost of the economic evaluator.








Eventually,
appellant resolved its litigation and negotiated license agreements with both
Kvaerner and FMC.  The Kvaerner license involved a fixed sum royalty for each
Christmas tree sold using appellant=s patents as well as two supply
agreements.  On August 22, 2003, appellee sent appellant notice of its election
of the Kvaerner royalty rate.  In response, appellant refused to acknowledge
appellee=s election, threatened to terminate
appellee=s license by declaring appellee in
default, and refused appellee=s requests to take the matter to an economic evaluator. 
Appellant then initiated the current litigation asking the trial court to
declare, among other things, (1) that any election by appellee of the Kvaerner
royalty rate must be based upon the economic value exchanged as a whole, and
(2) the determination of the effective percentage rate of the Kvaerner royalty
rate must take the economic value appellant received from the two Kvaerner
supply agreements into account.[1] 

While
the current litigation was in progress, appellant, on March 7, 2004, entered
into a license agreement with FMC (the A2004 FMC License@).  The 2004 FMC License required FMC
to make a lump sum payment of $6 million to appellant.  In addition, the 2004
FMC License included a cross-license granting appellant a license to certain
FMC patents and a supply agreement.  Under the 2004 FMC License, once it had
paid the $6 million lump sum, FMC had no royalty obligations going forward. 
After reviewing the 2004 FMC License, appellee notified appellant of its
election of the 2004 FMC License=s royalty terms and appellant Aacknowledg[ed] and accept[ed]
[appellee=s] election.@  Despite that acknowledgment and acceptance, the litigation
between appellant and appellee continued as the dispute widened to include the
2004 FMC License.

In March
2005, appellant moved to abate the litigation and send the dispute over the
royalty rates to arbitration.  The trial court granted appellant=s motion and ordered the parties to
arbitration.  The parties selected Professor Paul M. Janicke, a law professor
at the University of Houston Law Center, as the neutral arbitrator.  Based on
the terms of the Cross-License Agreement and the trial court=s arbitration order, Professor
Janicke was to determine the Aroyalty terms@ of the 2004 FMC License and the Kvaerner license.








In
October 2005, Professor Janicke issued his report.  In his report, Professor
Janicke found the 2004 FMC License had an effective royalty rate of .76 percent
and the Kvaerner license had an effective royalty rate of 6.46 percent, making both
more favorable than appellee=s 6.5 percent royalty rate.  Appellant moved to vacate the
arbitration award while appellee asked the trial court to confirm it.  On
November 18, 2005, the trial court granted appellee=s motion and confirmed the
arbitration award.  

Following
the arbitration, appellant and FMC entered into an amended and restated
cross-license agreement (the A2005 FMC License@).  Appellant then notified appellee
that since the 2004 FMC License had been replaced, appellee had lost the .76
percent royalty rate and its royalty rate had reverted back to the original 6.5
percent.  This issue was then added to the ongoing litigation.

All
remaining issues related to the construction of the Cross-License Agreement
were resolved through a series of motions for partial summary judgment filed by
appellee and which were granted by the trial court.  On July 20, 2006 the trial
court granted appellee=s motion for partial summary judgment contending it had not
breached the Cross-License Agreement when it applied the $14 million credit
resulting from the arbitrator=s award to any amounts due to appellant for the use of
appellant=s SpoolTree patents.  On September 8, 2006 the trial court granted
appellee=s motion for partial summary judgment
asserting any credit generated by appellee=s election of the 2004 FMC royalty
rate remained in place regardless of the continuing validity or existence of
the 2004 FMC License.  Finally, on November 22, 2006 the trial court granted
appellee=s motion for partial summary judgment
asserting (1) the Cross-License Agreement was not ambiguous, and (2) that once
appellee had elected the 2004 FMC royalty terms, nothing in the language of the
Cross-License Agreement allowed appellee=s royalty terms to revert back to the
original 6.5 percent rate.  After the parties dismissed their remaining claims,
the trial court entered a final judgment incorporating its prior orders.  This
appeal followed.

Discussion








Appellant
raises two issues in this appeal.  In its first issue, appellant contends the
trial court erred in its construction of the Cross-License Agreement when it
determined that once appellee had elected the 2004 FMC royalty terms, nothing
in the language of the Cross-License Agreement allowed appellee=s royalty terms to revert back to the
original 6.5 percent rate.  Within that first issue, appellant also argues the
Cross-License Agreement is ambiguous.  In the second issue, appellant asserts
the trial court erred when it confirmed Professor Janicke=s arbitration award.  We address each
in turn.

I.          Did the trial court err
in its construction of the Cross-License Agreement?

A.        The standard of review.

The movant for summary judgment has the burden to show
there is no genuine issue of material fact and is entitled to judgment as a
matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  In determining whether there is a genuine fact issue precluding summary
judgment, evidence favorable to the non-movant is taken as true and the
reviewing court makes all reasonable inferences and resolves all doubts in the
non-movant=s favor.  Id. at 548B549.  If there is
no genuine issue of material fact, summary judgment should issue as a matter of
law.  Hasse v. Glazner, 62 S.W.3d 795, 797 (Tex. 2001).  We review a
trial court=s summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

B.        Contract construction.      








In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Id.
at 662.  Ordinarily, the writing alone is sufficient to express the parties= intentions for it is the objective,
not subjective, intent that controls.  Matagorda Hosp. Dist. v. Burwell,
189 S.W.3d 738, 740 (Tex. 2006)(per curiam).  To achieve this, we examine and
consider the entire writing in an effort to harmonize and give effect to all
the provisions of the contract so that none will be rendered meaningless.  Valence
Operating Co., 164 S.W.3d at 662.  Contract terms are given their plain,
ordinary, and generally accepted meanings unless the contract itself shows them
to be used in a technical or different sense.  Id.  We construe
contracts from a utilitarian standpoint bearing in mind the particular business
activity sought to be served and will avoid when possible and proper, a
construction which is unreasonable, inequitable, and oppressive.  Frost Nat=l Bank v. L & F Distributors,
Ltd., 165 S.W.3d
310, 312 (Tex. 2005).  However, courts are not authorized to rewrite agreements
to insert provisions parties could have included or to imply terms for which
they have not bargained.  Tenneco, Inc. v. Enterprise Products Co., 925
S.W.2d 640, 646 (Tex. 1996).  In other words, courts cannot make contracts for
the parties.  HECI Exploration Co. v. Neel, 982 S.W.2d 881, 888 (Tex.
1998).

Whether a contract is ambiguous is a question of law.  Fein
v. R.P.H., Inc., 68 S.W.3d 260, 265 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied) (citing Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996)).  If, after the pertinent rules of construction are applied,
the contract can be given a definite or certain legal meaning, it is
unambiguous and we construe it as a matter of law.  Frost Nat=l Bank, 165 S.W.3d at 312.  On the other
hand, a contract is ambiguous if it is susceptible to more than one reasonable
interpretation.  Id.  However, courts should not strain to find an ambiguity
in a contract if such an exercise would defeat the parties= probable intent. 
In re Credit Suisse First Boston Mortgage Capital, L.L.C., 257 S.W.3d
486, 490 (Tex. App.CHouston [14th Dist.] 2008, orig.
proceeding).  If a contract is ambiguous, there is a fact issue on the parties= intent and we
must reverse the trial court=s summary judgment.  Fein, 68
S.W.3d at 265 (citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996)).








Disagreement
over the interpretation of an instrument does not automatically make it
ambiguous.  Medical Towers, Ltd. v. St. Luke=s Episcopal Hospital, 750 S.W.2d 820, 822 (Tex. App.CHouston [14th Dist.] 1988, writ
denied).  Nor does uncertainty or a lack of clarity in the language chosen by
the parties suffice to render a contract ambiguous.  Id.  In addition,
parol evidence is not admissible for the purpose of creating an ambiguity.  National
Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc., 907 S.W.2d
517, 520 (Tex. 1995).  Instead, parol evidence is only admissible to ascertain
the true intentions of the parties after a contract has already been found to
be ambiguous.  Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280,
283 (Tex. 1996).

C.        The trial court correctly
construed the Cross-License Agreement.

In its
first issue, appellant argues the trial court erred in its construction of
paragraph  5.2 of the Cross-License Agreement when it determined appellee=s election of the 2004 FMC royalty
rate would remain in effect for the remaining duration of the Cross-License
Agreement.  Instead of creating a window of time in which appellee could elect
the 2004 FMC royalty rate, appellant contends on appeal that the phrase Athen for so long as the third-party
license is in effect, the other PARTY shall be entitled to elect the more
favorable ROYALTY TERMS@ creates not only a window of time to choose, but also a
limit on the duration of the election.  Appellee responds that appellant=s construction is not reasonable as
it flies in the face of the plain meaning and structure of the language the
parties chose.  We agree with appellee.

1.         Is appellant=s construction of the
Most-Favored-Licensee Clause  reasonable? 








There is
nothing in the plain language of the Cross-License Agreement to support
appellant=s position that an election of a more favorable royalty rate, when made
in the proper time period, lasts only as long as the third-party license
remains effective.  For appellant=s interpretation of paragraph 5.2 of
the Cross-License Agreement to be reasonable, we would have to either (1)
insert additional language limiting the duration of appellee=s election and providing for a
reversion to the original 6.5 percent royalty rate; or (2) rearrange the
existing language.[2]  We can do
neither.  See Tenneco, Inc., 925 S.W.2d at 646; see also Fein, 68 S.W.3d at 267
(stating courts are not at liberty to redraft the terms of a contract while
professing to construe it); see also Lambert v. Affiliated Foods, Inc.,
20 S.W.3d 1, 6 (Tex. App.CAmarillo 1999), aff=d, 44 S.W.3d 544
(Tex. 2001) (stating courts are not permitted to draft a new contract between
parties, Aregardless of whether one or more of the parties
contracted wisely or foolishly, or created a hardship for himself@).  Instead, we conclude the phrase Athen for so long as the third-party
license is in effect@ modifies the phrase Athe other PARTY shall be entitled to
elect the more favorable ROYALTY TERMS.@  The meaning of the verb Aelect@ is Ato select by vote (as for office or
membership)@ or  Achoose, pick.@  The Meriam Webster Dictionary New Edition (2004). 
Accordingly, we hold the only reasonable construction of paragraph 5.2 of the
Cross-License Agreement is that it created a window of time in which appellee
could choose the 2004 FMC royalty rate and once chosen, the new rate would
remain in effect for the remaining duration of the Cross-License Agreement. 
Because we have determined there is only one reasonable construction of the
Cross-License Agreement, it is not ambiguous.  Frost Nat=l Bank, 165 S.W.3d at 312.

2.         Is appellant=s suggested purpose of the
Most-Favored Licensee Clause correct?








In an
effort to avoid the effect of the plain language of the Cross-License
Agreement, appellant contends the purpose of the Cross-License Agreement, as
well as industry custom[3], support its
proffered interpretation of paragraph 5.2.  According to appellant, the purpose
of a Amost-favored-licensee@ clause such as the one found in
paragraph 5.2, is to protect the first licensee from a competitive disadvantage
resulting from more favorable terms being granted to a later licensee. 
Therefore, appellant continues, construing paragraph 5.2 to create a window of
time for appellee to elect the more favorable rate, rather than a duration for
the elected rate to continue, defeats that purpose because, rather than
preventing a competitive disadvantage, it actually gives appellee a competitive
advantage.

In
support of its position that the purpose of a most-favored-licensee clause is
to avoid a competitive disadvantage, appellant calls this court=s attention to the testimony of its
intellectual property counsel explaining his interpretation of the
Most-Favored-Licensee clause at issue here.  However, because we have
determined the Cross-License Agreement is not ambiguous, parol evidence is not
admissible Ato vary the terms or to show the construction placed thereon by the
parties at the time or subsequent to the making thereof.@  Murphy v. Dilworth, 137 Tex.
32, 35, 151 S.W.2d 1004, 1005 (1941); see also In re H. E. Butt Grocery Co.,
17 S.W.3d 360, 369 (Tex. App.CHouston [14th Dist.] 2000, orig. proceeding) (AThe parol evidence rule precludes
consideration of extrinsic evidence to contradict, vary or add to the terms of
an unambiguous written agreement absent fraud, accident or mistake.@). 








In
addition, appellant cites Studiengesellschaft Kohle m.b.H. v. Novamont Corp.,
704 F.2d 48, 53 (2nd Cir. 1983), in support of its argument that the purpose of
every most-favored-licensee clause is to avoid a competitive disadvantage. 
However, while the court in Novamont did conclude the purpose of the
most-favored-licensee clause at issue in that case was to avoid a competitive
disadvantage, the Novamont clause differs from paragraph 5.2 in two important
ways.  First, the most-favored-licensee clause in Novamont had a
specific reversion clause providing that the elected royalty terms would revert
back to the original terms if the third party license terminated.  See Studiengesellschaft
Kohle m.b.H. v. Novamont Corp., 518 F.Supp. 557, 565 (S.D.N.Y. 1981) aff=d in part, rev=d in part, 704 F.2d 48 (2nd Cir. 1983). 
Second, the Novamont most-favored-licensee clause also had a section
providing that the licensor had no obligation to repay to the licensee any
royalties the licensee had previously paid.  Id.  The
most-favored-licensee clause at issue here does not have a reversion clause and
specifically provides that when appellee elected a more favorable royalty rate,
it was entitled to a retroactive credit on all royalties paid since the
inception of the Cross-License Agreement.  Because the Novamont
most-favored-licensee clause differs in these two important respects, the fact the
Second Circuit concluded the purpose of that clause was to avoid a competitive
disadvantage does not mandate the same result here.

Appellant=s proffered construction of the
most-favored-licensee clause is further undermined by the retroactive nature of
appellee=s election of a more favorable
royalty rate.  By agreeing to make the newly elected royalty rate retroactive
to the beginning of the Cross-License Agreement, a period when appellee was not
at a competitive disadvantage because there was not a more favorable royalty
rate, demonstrates the parties, through paragraph 5.2, rather than avoiding a
competitive disadvantage, instead sought to ensure that appellee, the party
with the most-favored-licensee status, actually had the best royalty rate
throughout the life of the Cross-License Agreement.

3.         Is the effect of the
Most-Favored Licensee Clause economically irrational and unsound?








 Finally,
appellant argues construing the Most-Favored-Licensee clause to create a window
of time for appellee to elect a more favorable royalty rate, which would then
remain in effect until the Cross-License Agreement expires, leads to an
economically irrational and unsound result.  While it may be true that a court,
when faced with two interpretations of a contract, one where the effect is an
economically rational result, and the other where it is not, the court will
reject the irrational interpretation.  However, appellant has not explained how
the trial court=s construction of the Most-Favored-Licensee clause leads to
an irrational or unsound result.[4]  While
appellant may not like the effect of the trial court=s construction, that alone does not
make the Cross-License Agreement irrational or unsound.  Ashcraft v.
Lookadoo, 952 S.W.2d 907, 911 (Tex. App.CDallas 1997), pet. denied, 977
S.W.2d 562 (Tex. 1998) (citing Provident Fire Ins. Co. v. Ashy, 139 Tex.
334, 339, 162 S.W.2d 684, 687 (1942)) (observing that because the parties make
their own contract, courts Alack the power to vary those terms to protect one of them
from the unforeseen consequences of their agreement@).

 Because
the trial court correctly construed the Cross-License Agreement, we overrule
appellant=s first issue.

 

II.        Did the trial court err
when it confirmed the arbitrator=s award?

In its
second issue, appellant contends the trial court erred when it confirmed
Professor Janicke=s award.  Within this issue appellant mounts a three-pronged
attack on the award.  First, appellant asks this court to adopt a new standard
for reviewing an arbitrator=s award by using the rules for reliability of expert
testimony as a guide.  Next, appellant asks this court to vacate the award
because the arbitrator allegedly refused to hear appellant=s evidence.  Finally, appellant asks
for the arbitration award to be vacated because, in appellant=s view, the arbitrator exceeded his
powers under the Cross-License Agreement.

A.        The standard of review.








The
Federal Arbitration Act (AFAA@) applies to any contract involving interstate commerce, to
the full extent of the Commerce Clause of the United States Constitution.  See
9 U.S.C. ' 2 (1999); Citigroup Global Markets, Inc. v. Brown, 261 S.W.3d
394, 399 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  The parties agree the
FAA applies.

A court
of appeals reviews de novo a trial court=s decision to confirm an arbitration
award under the FAA.  Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld,
L.L.P., 105 S.W.3d 244, 250 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).  This review, even though de novo, is extraordinarily narrow.  Id. 
The court of appeals may not review the arbitrator=s decision on the merits even if it
is alleged the decision is based on factual error or misinterprets the parties= agreement.  Id.  It is
presumed under the FAA that arbitration awards will be confirmed.  Id. 
Therefore, disputes that are committed by contract to the arbitral process
almost always are won or lost at the arbitration stage, not the appeal.   Id. 
Accordingly, successful court challenges to an arbitration award are few
and far between.  Id.

B.        An arbitrator is not an
expert witness.

Initially,
appellant invites this court to invent a new, common law, standard of review of
an arbitrator=s award.  Appellant suggests we should treat the arbitrator in this case
as a Ajointly retained expert@ and apply the standards governing
the reliability of expert opinions.  According to appellant, we should vacate
the arbitrator=s award if the arbitrator=s analysis would be deemed inadmissible under expert-witness
rules.  Even without considering the total lack of authority supporting
appellant=s proposition, we choose not to adopt this standard of review.








An
arbitrator does not function as an expert witness, but instead is the functional
equivalent of a judge.  Pullara v. American Arbitration Assoc., 191
S.W.3d 903, 906 (Tex. App.CTexarkana 2006, pet. denied).  Any attempt to impose an
expert-witness reliability standard on an arbitrator would be completely
counter to this special status and provides sufficient reason to reject
appellant=s suggestion outright.  However, if additional support is needed to
reject the idea of treating an arbitrator like an expert witness, one need only
look to the Supreme Court=s recent opinion in Hall St. Assocs., L.L.C. v. Mattel,
Inc. --- U. S.---, 128
S.Ct. 1396, 1405 (2008).  In Hall St., the Supreme Court held that
section 10 of the FAA provides the exclusive means for vacating an arbitrator=s award.  According to the Supreme
Court, Aany other reading opens the door to
the full-bore legal and evidentiary appeals that can >rende[r] informal arbitration merely
a prelude to a more cumbersome and time-consuming judicial review process.=@ Id.  (quoting Kyocera
Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (C.A. 9
2003)).  If we were to adopt appellant=s proposed standard of review, we
would open the door on the type of cumbersome and time-consuming judicial
review of arbitration awards the Supreme Court has expressly prohibited. 
Therefore, we follow the suggestion of the Supreme Court, and instead of
fighting against the strong national policy in favor of speedy resolution of
arbitrated disputes, we decline to accept appellant=s request for a legal and factual
sufficiency review of the arbitration award.

C.        The arbitrator did not
refuse to hear evidence.








Citing
section 10(a)(3) of the FAA, appellant contends the arbitration award must be
vacated because Professor Janicke did not give appellant an adequate
opportunity to present evidence and arguments.  However, there is nothing in
the record on appeal that demonstrates the arbitrator refused to postpone the
hearing or refused to hear evidence pertinent and material to the controversy. 
What the record does show is that under the terms of the Cross-License
Agreement, appellant and appellee were each entitled to a single written
submission to the arbitrator.  Under the Cross-License Agreement, neither party
was allowed a Aresponsive or other written submission unless specifically requested in
writing by the economic evaluator.@  There is no dispute appellant was
allowed that single submission.  Instead, appellant asks this court to vacate
the arbitration award because, following the issuance of his award, the
arbitrator refused to allow appellant to file a written submission requesting
that the arbitrator reconsider the evidence in the light of new arguments.  An
arbitrator=s refusal to reconsider an arbitration award is not the same as the
refusal to hear evidence pertinent and material to the controversy in the first
place.  Therefore, section 10(a)(3) of the FAA does not apply to the
circumstances present here and does not provide a basis for vacating the
arbitration award.  See 9 U.S.C. ' 10(a)(3).

D.        The arbitrator did not
exceed his powers.

The only
other statutory basis put forward by appellant for vacating the arbitration
award is the arbitrator exceeded his powers.  See 9 U.S.C. ' 10(a)(4).  The authority of arbitrators
is derived from the arbitration agreement and is limited to a decision of the
matters submitted therein either expressly or by necessary implication.   Gulf
Oil Corp. v. Guidry, 160 Tex. 139, 143, 327 S.W.2d 406, 408 (Tex. 1959). 
Arbitrators therefore exceed their powers when they decide matters not properly
before them.  Barsness v. Scott, 126 S.W.3d 232, 241 (Tex. App.CSan Antonio 2003, pet. denied).  To
meet this requirement, an arbitration award must have a basis that is at least
rationally inferable, if not obviously drawn, from the letter or purpose of the
agreement.  JJ-CC, Ltd. v. Transwestern Pipeline Co., No. 14-96-1103-CV,
1998 WL 788804, at *4 (Tex. App.CHouston [14th Dist.] Nov. 12, 1998,
no pet.) (not designated for publication).  The award must, therefore, in some
logical way, be derived from the wording or purpose of the contract.  Id. 
In making this inquiry, the reviewing court is not limited to the arbitrator=s explanation for the award.  Id. 
Rather, the reviewing court looks to the result reached and determines whether
the award, however arrived at, is rationally inferable from the contract.  Id.  
A mistake of fact or law in the application of substantive law is insufficient
to vacate an arbitration award.  Jamison & Harris v. National Loan
Investors, 939 S.W.2d 735, 737 (Tex. App.CHouston [14th Dist.]  1997, writ
denied).








After
examining the Cross-License Agreement and the arbitrator=s award, there is no doubt Professor
Janicke followed his contractual instructions and his award falls within the
permitted scope of the Cross-License Agreement.  The Cross-License Agreement
called for the arbitrator to determine the royalty rate and base of the
third-party licenses and that is what he did.  Appellant does not claim
otherwise, instead it argues the arbitrator made numerous mistakes of fact and
judgment and thereby exceeded his powers.[5] 
A complaint that the evidence does not support the arbitrator=s award, however, is not a complaint
that the arbitrator exceeded his powers.  Pheng Investments, Inc. v.
Rodriguez, 196 S.W.3d 322, 330 (Tex. App.CFort Worth 2006, no pet.).  Professor
Janicke may have made mistakes of fact or law (an issue we do not reach), but
he did not exceed his authority because he decided only those issues submitted
to him by the parties= contract.  We overrule appellant=s second issue on appeal.

Conclusion

Having overruled both of appellant=s issues on
appeal, we affirm the trial court=s judgment.

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Panel consists of
Justices Anderson, Seymore, and Hudson.[6]

 









[1]  Appellee answered and filed a counterclaim for breach
of contract.  Eventually, the trial court realigned the parties making appellee
the plaintiff.  Through the course of the litigation the parties would add
additional causes of action and issues to the litigation.  None of these
additional causes of action are relevant to this appeal. 





[2]  We note that in appellant=s brief, in making its argument for its interpretation
of paragraph 5.2 of the Cross-License Agreement, appellant consistently moved
the phrase Afor so long as the third-party license is in effect@ from its position before the word Aelect@ to after.  For
example, appellant argues: AHere, by its
express terms, the most-favored licensee clause allows [appellee] to elect the
royalty terms of another license >for
so long as the third-party license is in effect.=@ We decline appellant=s invitation to
rewrite the Cross-License Agreement in such a manner.  See Tenneco, Inc. v.
Enterprise Products Co., 925 S.W.2d 640, 646 (Tex. 1996). 





[3]  While it is true parol evidence may be admitted to
explain technical or other terms as used in a particular business or industry,
there are no such terms found in the Cross-License Agreement.  Accordingly, we
need not consider industry custom in our analysis.  Royal Indemnity Co. v.
Marshall, 388 S.W.2d 176, 180 (Tex. 1965).





[4]  Appellant=s
irrational result argument is based in part on their contention that under the
trial court=s construction of the Cross-License Agreement, the
newly elected royalty rate would Alast
forever.@  This simply is not the case.  According to its own
terms, the Cross-License Agreement and any election made by appellee, would
terminate when the last of the patents involved in the Cross-License Agreement
expired, which, during oral argument, the parties indicated would occur in
2013.





[5]  To the extent appellant=s second issue on appeal can be construed as a
complaint that Professor Janicke made a material miscalculation of figures in
his award, this does not change the result as, even if it were true, it would
only support a modification of the award and not a vacatur.  See 9
U.S.C. ' 11(a).  Because appellant never raised the issue of
modification of the arbitration award with the trial court, the  issue is
waived.  Tex. R. App. P. 33.1(a).





[6]  Senior Justice Harvey Hudson sitting by assignment.